JOHN M. YOUNG, RESPONDENT, *v.* A. T. SCHROEDER AND WIFE, APPELLANTS.[1]

1. EXECUTION SALE.— IRREGULARITIES.— EQUITABLE RELIEF.— ESTOPPEL IN PAIS.—SEMBLE.—When land worth $26,000, is sold in separate parcels to satisfy a judgment of $1,700, and the purchasers at all the execution sales except one are the attorneys of the judgment creditor, and that to the extent of furnishing the officer with descriptions of the property to be levied

---

[1] Appealed to the supreme court of the United States, July 31, 1894.

upon and sold, they directed and controlled the processes of the court and directed and required the officer to levy upon and sell the property in such parcels as rendered it impossible to realize at the sale a fair price, but led to a sacrifice of the debtor's property, such sales will be set aside and the judgment debtor allowed to redeem on an equitable basis even after the statutory time for redemption has expired, especially when the sales were attended with many and serious irregularities for which the parties claiming through the sales were responsible, and when one of the attorneys of the judgment creditor assured the judgment debtor that the statutory period of redemption would not be insisted upon, who relied upon this assurance and allowed the period of redemption to elapse. *Semble,* that the conduct of one member of a firm or copartnership not a party to the suit, about a matter not within the general scope of the partnership business, sufficient to create an estoppel against him, operates so as to bind another member of the firm sought to be charged, who had no knowledge of and did not participate in the acts creating the estoppel.

2. ID.—ID.—GROSS INADEQUACY OF PRICE.—LACHES.—Courts will set aside execution sales when it appears that the price obtained was grossly inadequate, and that the sales were coupled with irregularities, not merely formal and technical, but such as have a direct tendency to prevent the realizing of a fair price for the property sold, when such irregularities are attributable to the purchasers at the sales, unless the complaining party is estopped by his own laches.

3. ID.—ID.—EXCESSIVE LEVY.—VOID SALE.—Where an execution was issued and the officer levied it upon and sold certain property of the judgment debtor and returned it into court unsatisfied to the amount of $136, and another execution was issued which the officer levied upon certain other property of the judgment debtor, which he afterwards sold to satisfy the alleged balance of $136, and after deducting his fees, expenses and commissions therefrom amounting to $30, paid the balance, $106, to the attorneys of the judgment creditor, when in fact, there was only $25.57 due at the time of issuing the last execution. *Held,* that this was not an irregularity, merely such as would render the sale voidable, but the levy and sale being excessive, the sale was absolutely void.

(No. 437. Decided June 4, 1894. 37 P. R. 252.)

Appeal from the district court of the third judicial district, Hon. G. W. Bartch, *Judge.*

Action by John M. Young against A. T. Schroeder and wife to obtain a decree adjudging certain deeds, executed by the U. S. marshal pursuant to certain execution sales, to be fraudulent, and that the plaintiff be permitted to redeem from such sales, notwithstanding the statutory time for redemption had expired, and that the defendants be required to convey to him the property mentioned and described in said deeds. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Messrs. Rawlins & Critchlow* and *Messrs. Jones & Schroeder,* for appellants.

The court erred in permitting plaintiff to testify about a conversation had with Stephens relative to the redemption of the property. Stephens is not a party to the suit, and it related to a matter foreign to the scope of the partnership business. At the time plaintiff did not know that either Stephens or Schroeder had any interest in or control over the property. *Jackson* v. *Bartless,* 8 Johns. 381; 4 L. Ed. 57; *Anderson* v. *Tompkins,* 1 Fed. Cas. 851, No. 365. The mere relation of joint ownership of property is not enough to constitute each owner the agent of the other to bind him by fraud. 1 Bige. on Fraud, 223. Plaintiff and his cotenants had divided the land into distinct lots, and a conveyance of all plaintiff's interest in any one lot is valid and effectual against his cotenants. Freeman on Coten. 282, § 208; *Butler* v. *Roys,* 25 Mich. 53; S. C. 12 Am. Rep. 218; *Jackson* v. *Newton,* 18 Johns. 355.

The court found that at the date of the first sale, Stephens did not know of the existence of any other property, and then in another finding that he had formed an

intention to exhaust all of plaintiff's property. Inconsistent findings will not sustain a judgment. *Reese* v. *Corcoran,* 52 Cal. 495; *Manley* v. *Howlet,* 55 Cal. 94; *Harris* v. *Harris,* 59 Cal. 116; *Kloss* v. *Alleman,* 64 Cal. 87. There were three separate sales under two different executions. The court cannot grant entire relief in one action unless there was a common fraudulent intent as to all. Finding 10 makes such intent impossible. 2 Comp. Laws, § 3220; *Wallen* v. *Ruskan,* 12 How. Pr. 28; *Henderson* v. *Jackson,* 40 How. Pr. 168. As long as a judicial sale stands, the purchase price as between the parties is a conclusive test of its value. *Snyder* v. *Blair,* 33 N. J. Eq. 208. Where there is a conflict of evidence on material issues, the finding of the court is not conclusive on appeal, like the verdict of a jury or the finding of a common law court, and the supreme court will review the facts as well as the law. *Kelley* v. *Carker,* 55 Ark. 112; S. C. 17 S. W. R. 706; *Cheney* v. *Roodhouse,* 135 Ills. 25; *Droster* v. *Mueller,* 103 Mo. 624; *U. S.* v. *Old Settlers,* 148 U. S. 427; 37 L. Ed. 587. Fraud on the part of the purchaser must be shown, in addition to inadequacy of consideration. *Simmons* v. *Vandegrift,* 1 N. J. Eq. 55. There must be fraud to give a court of equity jurisdiction. Irregularity is not sufficient. *Cavanaugh* v. *Jakeway,* Walker Ch. 344; *Hansford* v. *Barber,* 3 A. K. Smith, 515. Some knowledge and participation in the act claimed to be fraudulent must be proved upon the party sought to be charged. The mere relationship of joint ownership to the property is not enough to constitute each owner the agent of the other to bind him by false representations in an unauthorized sale of the whole property. Bige. on Fraud, 223; *Holmes* v. *Wood,* 32 Ind. 201; *Arthur* v. *Griswold,* 55 N. Y. 400; *Perry* v. *Hale,* 143 Mass. 540; S. C. 10 N. E. 174.

The court nowhere finds that the defendant is guilty of actual fraud, and a failure so to find is equivalent to a

finding against the plaintiff. Elliot App. Proc. § 757; *Young* v. *Berger,* 32 N. E. 318. Even where the price paid is inadequate, in order to avoid the sale, it must be shown that the purchaser is in some measure responsible for it. *White* v. *Wilson,* 14 Ves. Jr. 151; *Graffam* v. *Burgess.* 117 U. S. 180; *Russel* v. *Pew,* 31 P. R. 77; *Hudgens* v. *Morrow,* 47 Ark. 515. The plaintiff, the judgment debtor, knew of the execution sales and could have directed the officer, and having failed to do so cannot now complain of his own negligence. 2 Comp. Laws, § 3436; *Jones* v. *Townsend* (Tenn.), 5 Cen. Law J. 202. Where there is time for redemption allowed by law, the judgment debtor must redeem or make a motion to have the sale set aside before the time of redemption expires. *Powers* v. *Larabee,* 57 N. W. 791, and cases; *Jones* v. *Townsend* (Tenn.), 5 Cent. Law J. 202; *Coolbaugh* v. *Roemer,* 32 Minn. 445; *Jenkins* v. *Merriweather,* 109 Ill. 647; *Stewart* v. *Marshal,* 4 G. Green (Ia.), 75; *State Bank* v. *Noland,* 13 Ark. 299; *Love* v. *Cherry,* 24 Ia. 210; *Chambers* v. *Stone,* 9 Ala. 260; *Abercrombie* v. *Conner,* 10 Ala. 292; 2 Freeman on Exec. § 306, p. 1039; *Fletcher* v. *McGill,* 110 Ind. 406; *Rigney* v. *Small,* 60 Ill. 416; *Johnson* v. *Murray,* 112 Ind. 154; *Richey* v. *Merritt,* 108 Ind. 347, 9 N. E. 368; *Levan* v. *Milholland,* 114 Pa. St. 49.

In order to create an estoppel *in pais,* the representation must relate to a present or a past state of things. *Langton* v. *Doud,* 10 Allen, 433; *Jackson* v. *Allen,* 120 Mass. 79; *White* v. *Ashton,* 51 N. Y. 280. An estoppel from the representation of a party can seldom arise, except where the representations relate to a fact, to a present or past state of things. *Union Life Ins. Co.* v. *Mowry,* 96 U. S. 549, 24 L. Ed. 676. The party estopped must have intended that his misrepresentations should be acted upon by the party who asserts the estoppel. *Zuchtman* v. *Roberts,* 109 Mass. 53. An attorney may purchase at an

execution sale subject to the right of his client to claim the benefit thereof. *Smith* v. *Black*, 115 U. S. 308, 29 L. Ed. 398; *Allen* v. *Gillett*, 127 U. S. 589, 32 L. Ed. 271; *Mining Co.* v. *Mason*, 145 U. S. 340, 36 L. Ed. 736. A levy upon part of a tract held as tenant in common is good as against judgment debtor. The only persons who can complain are his cotenants. *Gregory* v. *Tozier*, 24 Me. 308; *Goodwin* v. *Gregg*, 28 Me. 188; *Varnum* v. *Abbott*, 7 Am. Dec. 87. In case the officer, after offering the property separately, sells *en masse*, such a sale is good. *Hill* v. *F. M. N. B.*, 97 U. S. 450; *Van Valkenberg* v. *Trustees*, 66 Ill. 103; *Mugge* v. *Ginger*, 59 Ind. 195.

*Mr. W. H. Dickson* and *Messrs. Williams, Van Cott & Sutherland,* for respondents.

MERRITT, C. J.:

This action was brought to obtain a decree of the court adjudging certain deeds (mentioned in the complaint, and executed by the United States marshal of Utah territory pursuant to certain execution sales made under a judgment obtained in the third district court by Clark, Eldredge & Co., a corporation, against John M. Young, the plaintiff, and others) to be fraudulent, and that the plaintiff be permitted to redeem from such sales, notwithstanding the statutory time for redemption had expired, and that defendants be required to convey to him the property mentioned and described in said deeds and complaint. This relief was sought on the ground of gross inadequacy of the price obtained at such sales, coupled with a great number of irregularities attending the sales, which led to the sacrifice of plaintiff's property. The alleged irregularities are specifically set forth in the complaint, and also in the findings of the court below. Upon the filing of the complaint the defendants Frank B. Stephens and wife

made a satisfactory settlement with the plaintiff, and in pursuance thereof conveyed to him all their interests in the property in controversy, and the suit as to these defendants was thereupon dismissed. After that the defendants Schroeder and wife filed their answer, and a trial was had, which resulted in a judgment and decree in favor of plaintiff substantially as prayed for in the complaint, from which decree, and the order denying a new trial, this appeal is prosecuted.

The findings of fact made by the court below are very full. We have carefully examined the record, and are satisfied that they are fully sustained by the evidence. From these findings it appears that on the 9th of February, 1891, Clark, Eldredge & Co., a corporation, commenced an action against John M. Young (the plaintiff herein), Henry Goddard, and George Goddard to recover $1,640.61, with interest from January 3, 1891. That afterwards a judgment by default was entered against the plaintiff (John M. Young) on March 6, 1891, for $1,673.36, and costs amounting to $30.50, said judgment bearing interest at 1 per cent. per month. That Frank B. Stephens and A. T. Schroeder, partners, were the attorneys for Clark, Eldredge & Co. in said action; that the plaintiff, John M. Young, and his sister, Lydia Y. Merrill, were the owners in fee, as tenants in common, of all of that part of lot 2, block 70, Plat A, Salt Lake City survey, commencing 64½ feet west from the northeast corner of said lot 2, thence west 61½ feet, thence south 20 rods, thence east 94½ feet, thence north 90¾ feet, thence east 31¼ feet, thence north 41¼ feet, thence west 16½ feet, thence north 148½ feet, thence west 48 feet, thence north 49½ feet, to the place of beginning; and also lot 12 in block 8, Five-Acre Plat A, Big Field survey, in Salt Lake county, Utah. That the title of the plaintiff and Lydia Y. Merrill in each of said properties

was derived from the last will and testament of John
Young, deceased, father of said John M. Young and Lydia
Y. Merrill, and was subject to a right in Sarah Milton
Young and Ann Olive Young to receive each one-fourth
of the income arising from said properties during their
respective lives.    That the plaintiff's interest in said por-
tion of lot 2 at the times of the sales hereinafter men-
tioned was worth at least the sum of $25,000, and his
interest in said lot 12 was worth at least $1,000.    (There
is an alley extending from north to south practically through
the center of said portion of said lot 2.)    That on the 29th
day of April, 1891, an execution was issued in said action
of Clark, Eldredge & Co. to the United States marshal,
directing him to levy on sufficient personal property to
satisfy said judgment, and, if sufficient personal property
could not be found, then to levy on the real estate belong-
ing to the defendants in said action; and the marshal, being
unable to find any personal property out of which to satisfy
said judgment, did, on May 7, 1891, give notice that he
attached and levied on all the right, title, claim, and
interest of said plaintiff and his codefendants in said
action in and to that certain parcel of land described as
beginning 101 feet north and 39½ feet east of the south-
west corner of lot 2, block 70, Plat A, Salt Lake City
survey, running thence east 15½ feet, thence north 28 feet,
thence west 15½ feet, thence south 28 feet, to the place of
beginning; and also on that part of the same lot described
as beginning 32½ feet west from the southest corner of said
lot, running thence west 38 feet, thence north 98⅓ feet,
thence east 38 feet, thence south 98⅓ feet, to the place of
beginning; and also on a part of lot 12, block 8, Five-
Acre Plat A, Big Field survey.    That part of said lot 2
secondly described in said notice lies on the east side of
said alley, while that portion firstly described in the notice
lies on the west side.    This last-mentioned portion was

carved out of the heart of that portion of said lot 2 owned as aforesaid by plaintiff and his sister, and there was no means of ingress to or egress from this portion so carved out of the larger tract. That the marshal, by his return, dated July 25, 1891, certified that under said writ he had sold the property described in the notice to John Clark, and, deducting his commissions and expenses of sale, paid the balance realized upon said sale, viz., $962.36, to the attorneys of Clark, Eldredge & Co., and further returned that there was still due and unpaid on said judgment the sum of $886.90. (The John Clark mentioned in the return was a director and the principal stockholder of Clark, Eldredge & Co.)

On July 28, 1891, an alias execution issued from the said court in said action for the full sum of $1,673.36 and $30.50 costs, directed to said marshal, and thereafter the marshal made return thereon to said court that he had levied on all the right, title, claim, and interest of said plaintiff and his codefendants in said action in and to that certain parcel of land described as beginning $64\frac{1}{2}$ feet west of the northeast corner of said lot 2, running thence west $45\frac{1}{2}$ feet, thence south 20 rods, thence east $78\frac{1}{2}$ feet, thence north $90\frac{3}{4}$ feet, thence east $31\frac{1}{4}$ feet, thence north $41\frac{1}{4}$ feet, thence west $16\frac{1}{2}$ feet, thence north $148\frac{1}{2}$ feet, thence west 48 feet, thence north $49\frac{1}{2}$ feet, to the place of beginning; and certified by said return that he had sold all the premises last described to the said Frank B. Stephens and A. T. Schroeder for the sum of $828.70; and further certified that the judgment obtained by said corporation was still unsatisfied to the extent of $100. (The marshal's return was erroneous in this: that the true balance was less than $26.) On the 30th of September, 1891, said marshal made a further return to said last-mentioned writ, in which he certified that on September 30, 1891, he sold all of lot 12, block 8, Five-Acre

Plat A, Big Field survey, situate in Salt Lake county, and also all that certain parcel of land described as beginning 39 feet east and 81 feet north of the southwest corner of said lot 2, running thence north 209 feet, thence east 16½ feet, thence south 209 feet, thence west 16½ feet, to the place of beginning, to said Frank B. Stephens and A. T. Schroeder, for the sum of $136; and that, deducting the costs and expenses of said last levy, amounting to $30, paid the balance, $106, to the attorneys of said Clark, Eldredge & Co., and returned said writ fully satisfied. All of that part of lot 2 firstly described in this statement, a plat of which appears in the record, constitutes a single parcel of land, and should be regarded and treated as such, and not as being divided into separate lots or parcels; and each and every parcel of said lot 2, block 70, plat A, so sold under said several writs of execution, was a part and portion of that part of said lot 2 which the said John M. Young derived title to under the will of John Young, deceased, as aforesaid.

It further appears that said Stephens furnished the marshal from time to time, with a description of the property to be levied upon and sold under said executions, and that the officer did levy and sell, from time to time, according to the descriptions furnished him by said Stephens. That the property so sold to said Clark was afterwards, and prior to the commencement of this action, conveyed by Clark by quitclaim deed to said Stephens & Shroeder, and that the same was bid in by said Stephens for said Clark. That the other portions of said lot 2, sold under said several executions, and said lot 12, were bid in at said sales by Stephens for himself and Shroeder, and that at none of said sales was there any other bidder than Stephens, nor was either of said sales attended by any person other than Stephens and the officer conducting the sales. At the time the last of these sales was made, to-wit, on 30th Sep-

tember, 1891, the balance due Clark, Eldredge & Co. on said judgment amounted to $25.57, and no more, while the property of the plaintiff was sold for $136 at such sale, $106 of which was by the marshal paid to Stephens & Schroeder, no part of which was ever accounted for to plaintiff. It further appears that after said several sales had been made, and before the time for redemption had expired, Stephens informed the plaintiff that the statutory time for redemption would not be insisted upon; that the plaintiff, believing and relying upon such promise and assurance, allowed the period for redemption to elapse without redeeming any of said property from said sales, and that marshal's deeds were given to the purchasers at said sales in pursuance of the statute in such cases made and provided. It further appears that said lot 12 had been sold for taxes for the year 1890, and also for the year 1891, and that in the month of April, 1892, after Schroeder had obtained the marshal's deed for said lot 12, he was informed that the plaintiff was about to redeem said lot 12 from both of said tax sales, and that he well understood at the time that plaintiff was unaware of the fact that said lot 12 had been sold under execution; nevertheless he permitted the plaintiff to redeem said property from said tax sales, and purposely concealed from him the fact that said property had been so sold under execution, and that he and his partner, Stephens, then held the marshal's deed therefor.

It further appears from the record that it was the design and purpose of Stephens & Schroeder at the outset to exhaust, if possible, all the property of plaintiff, of whatever nature or description, regardless of its value, under said several executions, and that they in fact accomplished that purpose. Prior to the commencement of this action, plaintiff offered to pay to Stephens & Schroeder the full amount of the Clark, Eldredge & Co. judg-

ment, together with the interest thereon at the rate of 1
per cent. per month, to compensate Stephens & Schroeder
liberally for all services and trouble that they had ren-
dered or been put to in the premises, to repay all or any
advances which they, or either of them, might have made
on account of the property, with interest thereon, and, in
addition, to give them a bonus of $1,000 if they would
reconvey said properties to plaintiff, which offer they de-
clined and refused to accept. Such, in brief, is the history
of the transaction by which the plaintiff was stripped of
all his possessions, and his property, worth at the time
$26,000 or more, was taken to satisfy a judgment of about
$1,700. An additional feature of the transaction is that
Stephens & Schroeder were members of the bar, attorneys
for the judgment creditors, who thus, under the forms of
law and the processes of the court, sought to enrich them-
selves without any consideration for the rights of the judg-
ment debtor, and who proceeded in disregard of the
injustice and oppression to which he was thereby sub-
jected.

It is this transaction which appellants ask this court to
approve. We find ourselves unable to yield to the
appeal. We may say, with the supreme court of the
United States in the case of *Byers* v. *Surget, infra:* "It
seems pertinent here to inquire under what system of civil
polity, under what code of law or ethics, a transaction
like that disclosed by the record in this case can be ex-
cused, or even palliated." It is insisted by appellants that
mere inadequacy of price, however gross, will not authorize
the courts to set aside a judicial sale. The general rule
undoubtedly is that mere inadequacy of price, alone, does
not authorize the disturbance of such a sale; but we are
not prepared to sanction the unqualified statement of the
rule as put by appellants' counsel. If the inadequacy is
so gross as at once to shock the conscience of all fair and

impartial minds, if the sacrifice is such that every honest man would hesitate to take advantage of it, it may well be doubted whether every such case would be beyond the power of a court of equity to relieve against.

In *Byers* v. *Surget*, 19 How. (U. S.), it is said on page 311: "To meet the objection made to the sale in this case, founded upon the inadequacy of the price for which the land was sold, it is insisted that the inadequacy of consideration simply cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexed to it by the courts, viz., unless such inadequacy be so gross as to shock the conscience; for this qualification implies necessarily the affirmation that, if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of fraud." In the case of *Butler* v. *Haskell*, 4 Desaus. Eq. 651, the chancellor says: "I consider the result of the great body of the cases to be that, wherever the court perceives that a sale of property has been made at a grossly inadequate price, such as would shock a correct mind, this inadequacy furnishes a strong, and, in general, a conclusive, presumption, though there be no direct proof of fraud, that an undue advantage has been taken of the ignorance, weakness, or the distress or necessity of the vendor; and this imposes on the purchaser a necessity to remove this violent presumption by the clearest evidence of fairness of his conduct."

In *Graffam* v. *Burgess*, 117 U. S. 180, 6 Sup. Ct. 686, the supreme court of the United States says: "From the cases here cited we may draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property or party interested has been for any other reason misled or surprised, then the sale will be regarded as fraudulent and void, or

the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud." All the cases unite in the doctrine that on gross inadequacy of price, coupled with irregularities attending the sale, especially where such irregularities are not merely formal and technical, but such as have a direct tendency to prevent the realizing of a fair price for the property sold, and are attributable to the purchaser at the sale, it is the duty of the courts to set the sale aside, unless the complaining party is estopped by his own laches. *Chamblee* v. *Tarbox,* 84 Am. Dec. 614; *Howell* v. *Baker,* 4 Johns. Ch. 119; *Nesbitt* v. *Dallam,* 28 Am. Dec. 236; *Morris* v. *Robey,* 73 Ill. 462; *Byers* v. *Surget,* 19 How. 303; *Graffam* v. *Burgess,* 117 U. S. 180, 6 Sup. Ct. 686.

This is not a case which rests on mere inadequacy of price alone, but one where the sales complained of were attended by such substantial irregularities as must have prevented a sale at a fair sum. For instance, one of the parcels of said lot 2, levied upon and sold under the first execution, is described as beginning 101 feet north and $39\frac{1}{2}$ feet east of the southwest corner of said lot 2, thence east $15\frac{1}{2}$ feet, north 28 feet, west $15\frac{1}{2}$ feet, and south 28 feet to the beginning. Reference to the plat in evidence shows that the property thus described is a portion of that part of lot 2 to which plaintiff and his sister derived title through the will of their deceased father, as before stated, and is included within the exterior boundaries of that portion thereof shown by the record to have been at that time leased to one Gebhardt. The purchaser of the part thus levied on and sold by the marshal acquired a piece of land having no means of access to it. It is needless to say that such a transaction must necessarily result in a sacrifice of the property. Again, in the sales made under

the several executions of portions of said lot 2 it appears that in each instance the levy was upon and the sale of all the plaintiff's right, title, and interest in a specific part of the portion of said lot 2 so owned by him and his sister, Lydia Y. Merrill. This is also an irregularity that renders the sale voidable, if not void, the necessary tendency of a sale under such a levy being to depreciate the value of the property sold.

In Freeman on Cotenancy and Partition (section 216), under the heading of "Conveyance of Part under Execution," it is said: "We have already seen that the decisions determining the effect of a conveyance made by a cotenant, and purporting to convey his interest in some specified parcel, are very inharmonious. The reasons which exist in the case of a voluntary are somewhat different from those accompanying an involuntary conveyance. The purchase of the grantor's interest in a specified parcel is, in effect, a wager that such parcel will be set off to him on partition, or otherwise confirmed to him by the other cotenants. Still, if such circumstances exist that the grantor sees fit to make, and the grantee to accept, a conveyance which may, in the event of an unfavorable partition, convey nothing, we can see no valid reason for denying the utmost effect to the deed which it can be given, consistently with the rights of the other cotenants. But in the case of an involuntary transfer of property the interest of the person whose estate is to be divested by compulsion ought to be carefully considered and jealously guarded. If an officer may lawfully levy on a specific parcel and subject it to forced sale, he may thereby sacrifice the property of the defendant, for few persons would be found willing to bid for that which, when purchased, consisted of a mere contingent interest,—an interest which the other cotenants were not bound to notice, and which might be finally lost upon a partition of the common property.

Hence the rule, supported by a decided preponderance of the authorities, is that the levy and sale of the debtor's interest in a specific part of the lands cannot be sustained." See, also, *Starr* v. *Leavitt*, 2 Conn. 243; *Smith* v. *Benson*, 9 Vt. 138, and the cases cited in note to *Smith* v. *Huntoon* (Ill. Sup.), 24 N. E. 971, 23 Am. St. Rep. 651.

The rights of the cotenants of the judgment are not affected by the sale. In proceedings instituted by them for partition of the common property they can ignore the same, and the result of the partition may be to deprive the purchaser at such judicial sale of that which he bid and paid for. Such being the hazard which the purchaser must necessarily take, it is not reasonable to suppose that any one would bid a fair price for the property. The wisdom of the rule announced in the cases just cited is exemplified by the facts of this case. That part of lot 2 in controversy is but 94½ feet in width east and west. It is cut through the center from north to south by an alleyway, and the record discloses that it could be most equitably divided between the cotenants, the plaintiff and his sister, by allotting to one all of that part lying on the east, and to the other all that lying on the west, of the alley. But it will be remembered that under the first execution issued on the Clark, Eldredge & Co. judgment the marshal levied on and sold two parcels of said lot 2, one of which lies on the east side of the alley and the other near the center of that portion situate on the west side.

Now, if Lydia Y. Merrill, the cotenant of the plaintiff, or those claiming under her, should commence suit for partition, it would be found impracticable to make such a division of the property as she or they would be entitled to without ignoring one or the other of these sales. The court called upon to make partition would be constrained to ignore such sales, or at least one of them. Moreover, at the time the last sale was made under the executions

mentioned, the balance remaining unpaid on the Clark, Eldredge & Co. judgment amounted to $25.57, and no more, yet the officer levied upon and sold property of Young to satisfy an alleged balance of $136, and, after deducting his fees, expenses, and commissions therefrom, paid the balance, $106, to Stephens & Schroeder, who retained the same ever after. This was not an irregularity merely, such as would render the sale voidable, but, the levy and sale being excessive, the sale was absolutely void. *Glidden* v. *Chase,* 56 Am. Dec. 690; *Patterson* v. *Carneal,* 13 Am. Dec. 208; *Hastings* v. *Johnson,* 1 Nev. 613.

It will be observed that the purchasers at all the execution sales complained of except the first were the attorneys for the judgment creditor; that to the extent of furnishing the officer with the descriptions of the property to be levied on and sold by him under the executions, they directed and controlled the processes of the court, and directed and required the officer to levy upon and sell the property in such parcels as rendered it impossible to realize at the sales a fair price therefor. A purchase by an attorney for his own benefit at a sale over which he has exercised any direction or control should always be closely scrutinized by the court. In *Jones* v. *Martin,* 80 Am. Dec. 641, speaking of such purchases, the court says: "Public policy and the analogies of the law require that they should be considered *per se* as in the twilight between legal fraud and fairness, and should be deemed fraudulent, or in trust for the debtor, upon slight additional facts." See *Howell* v. *Baker,* 4 Johns. Ch. 117; *Byers* v. *Surget,* 19 How. 303. And where, as in this case, the attorneys, who became purchasers, have so directed and controlled the officer charged with the duty of executing the writ as to lead to a sacrifice of the debtor's property, the court will not hesitate to grant relief.

It is contended by the appellants that relief cannot be granted in this case, because the statutory period for redemption had expired before this suit was brought. The cases are by no means rare where a court of equity has interfered to set aside a sale after the time for redemption has expired, such sale having been attended by irregularities, and having resulted in a gross sacrifice of the judgment debtor's property. *Morris* v. *Robey,* 73 Ill. 462; *Blight's Heirs* v. *Tobin,* 18 Am. Dec. 219; *Bullen* v. *Dawson* (Ill. Sup.), 29 N. E. 1038; *Graffam* v. *Burgess,* 117 U. S. 180, 6 Sup. Ct. 686. We may add that it appears from the record that the plaintiff was assured by Mr. Stephens, before the period for redemption had expired, that the statutory period would not be insisted upon; and it comes with bad grace from the defendant now to urge that the plaintiff should be estopped by the fact that he relied upon that promise. It is true that this assurance was given, not by defendant Schroeder, but by his partner, Stephens. They, however, were acting in concert, engaged in a joint venture, and all the acts and declarations of Stephens in connection with the sales and purchases in question were, under the circumstances disclosed by this record, binding upon the defendant Schroeder. *Blight's Heirs* v. *Tobin,* 18 Am. Dec. 219.

We have made a careful examination of the record in connection with the numerous errors assigned on the part of the appellants, and have been unable to find any error which would call for a reversal of the decree of the court below. The fact that there was a gross sacrifice of the judgment debtor's property at these sales is proved beyond controversy. In the same manner it is established that these sales were attended by many and serious irregularities, for which the parties claiming through these sales were directly responsible. Where such facts are clearly established by the evidence, and a decree is pronounced

permitting redemption on an equitable basis, it will not be disturbed because of any technical errors in the trial of the case. Let the order and decree appealed from be affirmed.

MINER and SMITH, JJ., concur.