IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Mike Meguerditchian, an individual, | ) | OPINION |
| | ) | |
| Plaintiff, Appellee, and Cross-appellant, | ) | Case No. 20100850-CA |
| | ) | |
| | ) | |
| v. | ) | F I L E D |
| | ) | (June 28, 2012) |
| Max Smith, individually and as trustee | ) | |
| of the Smith Family Living Trust, | ) | 2012 UT App 176 |
| | ) | |
| Defendant, Appellant, and Cross-appellee. | ) | |
| | ) | |

-----

Sixth District, Manti Department, 050600136
The Honorable Marvin Bagley

Attorneys:     Darwin C. Fisher, St. George, for Appellant and Cross-appellee
              Paul M. King, Salt Lake City, for Appellee and Cross-appellant

-----

Before Judges McHugh, Orme, and Davis.

DAVIS, Judge:

¶1     Max Smith, individually and as trustee of the Smith Family Living Trust, appeals the trial court's ruling partially denying his motion to set aside a sheriff's sale of real property.  Mike Meguerditchian, Smith's judgment creditor and the purchaser of the

real property, cross-appeals the trial court's granting of the motion with respect to water rights[1] sold at the sheriff's sale. We affirm in part and reverse in part.

BACKGROUND

¶2     On December 8, 2008, the trial court awarded Meguerditchian a summary judgment in the amount of $54,690.92 against Smith in connection with a breach of contract suit. On March 26, 2009, Meguerditchian filed an application for a writ of execution, which listed personal property, real property, and water rights belonging to Smith. The trial court issued the writ on April 1, 2009. The writ instructed the sheriff to sell the non-exempt personal property first, and then the real property if sufficient non-exempt personal property could not be found. Smith objected to the writ, asserting that the personal property was exempt from execution because the items of personal property were "tools of his trade," *see* Utah Code Ann. § 78B-5-506(2) (2008). In a status and scheduling conference relating to the objection held on June 17, 2009, Meguerditchian informed Smith and the court that the personal property would not be sold at the sheriff's sale because the officer conducting the sale had been unable to locate the serial numbers for the property. He asserted that it was therefore unnecessary for the trial court to address Smith's objection to the sale of the personal property. Smith did not object to this resolution and does not appear to have attempted to provide the sheriff with the necessary information so as to facilitate the sale of the personal property.

¶3     The Sanpete County Sheriff's Office completed posting of the notice of sale on June 15, 2009, and filed an affidavit of posting with the court on June 16. The sheriff's sale was scheduled for July 7, 2009, at 11:00 a.m., and the notice indicated that four items would be sold: (1) Smith's interest in a 9.42 acre parcel of real property, (2) a parcel described as "Oaker Hills Plat 4," (3) Smith's interest in Water Right #51-224, and (4) "other rights of [Smith] in water rights and/or interests in water wells located in Sanpete County, Utah." On June 22, 2009, Smith filed a Motion to Set Aside Summary Judgment and Quash Writ of Execution. The trial court held a hearing on the motion on

---

[1]The trial court ruled that the water rights at issue in this case constituted real property, a ruling neither party has challenged on appeal. However, for ease of reference, we use the term "real property" to describe only the parcels of land and the term "water rights" to describe the water rights.

June 24 but continued the hearing to July 8. Because the sale had originally been scheduled for July 7, it was stayed until after the continued hearing. The trial court denied Smith's motion on July 8.

¶4 The sheriff's sale was conducted on July 10. Meguerditchian was the only bidder at the sale and purchased, via credit bid, the 9.42 acre parcel for $3,000, the Oaker Hills Plat 4 for $30,000, Water Right #51-224 for $30,000, and the other unspecified water rights for $3,000. The Sanpete County Sheriff's Office issued a certificate of sale on July 15, 2009. Subsequent to the sale, Meguerditchian and his attorney formed a limited liability company to hold and develop the real property.

¶5 On December 8, 2009, Smith moved the court to set aside the sale. Following a hearing, the trial court found that the total fair market value of the two parcels of real property was $505,000 as of the date of the sheriff's sale. It also valued the water rights at $7,500 per acre foot and found that Smith held more than twenty acre feet of water (or at least $150,000 worth). Given the total $33,000 bid for the real property and $33,000 bid for the water rights, the trial court determined that the sale prices of both the real property and the water rights were "grossly inadequate, shocking the conscience of the Court."[2]

¶6 The trial court next considered whether there were irregularities in the sale itself. The trial court found that the officer conducting the sheriff's sale acted appropriately by selling the real property and water rights, given that he was unable to locate sufficient personal property. Furthermore, it concluded "that there was nothing misleading regarding the sale of real property . . . and no unfairness in the conduct of the purchasing party with respect to the two parcels [of] real property," and "that there was nothing irregular in the sale of real property at [the] Sheriff's Sale." However, the trial court ruled that the description of Water Right #51-224 was insufficient because "several

---

[2]Although the two parcels of real property were sold separately from one another and Water Right #51-224 was sold separately from the remainder of the water rights, the trial court determined only the total value of the real property and the total value of the water rights in assessing the adequacy of the price, rather than determining the individual value of each item sold. Meguerditchian does not challenge the trial court's finding that the sale prices were grossly inadequate other than to point out that Smith's interest in 3.275 acre feet of Water Right #51-224, which was alone sold for $30,000, was worth only approximately $24,562.50. *See infra* note 9.

of the rights included in [that] water right have been severed off and have individual water right numbers," and that the description of the "other water rights" was also insufficient. The court ruled that the insufficient descriptions caused "confusion, which would have the effect of discouraging bidders at the sale and which would have a direct effect of lowering the price at the Sheriff's Sale." Because there were no irregularities in the sale of the real property, the trial court denied Smith's motion to set aside the sale with respect to the real property. However, the trial court granted the motion with respect to the water rights because it found both that the purchase price was grossly inadequate and that there were irregularities attending the sale.

¶7     Smith appealed the trial court's ruling with respect to the real property. Meguerditchian filed a cross-appeal challenging only the trial court's ruling with respect to Water Right #51-224.


ISSUES AND STANDARDS OF REVIEW

¶8     Smith argues, first, that the trial court erred in declining to set aside the sale in the absence of irregularities and, second, that the trial court erred in determining that there were no irregularities in the sale of the real property. On cross-appeal, Meguerditchian argues that the trial court erred in setting aside the sale of Water Right #51-224 because that particular water right was sufficiently described.

¶9     The standard for setting aside a sheriff's sale is based on case law. "[W]e consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness." *State v. Richardson*, 843 P.2d 517, 518 (Utah Ct. App. 1992). Nevertheless, "a district court has a high degree of discretion in determining whether the facts of a case justify extending a redemption period or setting aside a sheriff's sale after the expiration of the redemption period," and "a district court's decision to set aside a sheriff's sale is to be reviewed for an abuse of . . . discretion." *Pyper v. Bond* (*Pyper II*), 2011 UT 45, ¶ 24, 258 P.3d 575 (omission in original) (internal quotation marks omitted); *see also Goggin v. Goggin*, 2011 UT 76, ¶ 17, 267 P.3d 885 ("We review a grant of equitable relief for an abuse of discretion," reviewing the trial court's "factual findings for clear error and . . . its legal conclusions for correctness." (omission in original) (internal quotation marks omitted)).

ANALYSIS

## I. The Trial Court Did Not Abuse Its Discretion by Declining to Set Aside the Sheriff's Sale in the Absence of Irregularities.

¶10   One of the main justifications[3] for setting aside a sheriff's sale or extending the redemption period involves the interplay of two factors:  (1) gross inadequacy of the purchase price and (2) irregularity in the sale so as to indicate at least "slight circumstances of unfairness."  *See Pyper v. Bond* (*Pyper I*), 2009 UT App 331, ¶¶ 11-12, 224 P.3d 713 (internal quotation marks omitted) (citing *Young v. Schroeder*, 10 Utah 155, 37 P. 252, 254 (1894), *aff'd*, 161 U.S. 334 (1896)), *aff'd*, *Pyper II*, 2011 UT 45.  "These factors operate on a sliding scale.  Thus, the greater the disproportionality in price, the less unfairness or fewer irregularities a party must demonstrate before a court may justifiably extend a redemption period or set aside a sheriff's sale."  *Pyper II*, 2011 UT 45, ¶ 15.  Smith argues that the purchase prices of the real property in this case were so disproportionate to the market value that no irregularity was necessary to justify setting aside the sheriff's sale.  We disagree.

¶11   It has been theorized that an "inadequacy [of price] . . . so gross as at once to shock the conscience of all fair and impartial minds, . . . such that every honest man would hesitate to take advantage of it," might alone justify a trial court in exercising its equitable powers to grant relief, even where there are no irregularities in the sale.  *See Young*, 37 P. at 254; *see also Pyper I*, 2009 UT App 331, ¶ 12 n.5 (observing that the possibility of an exception to the general rule requiring both inadequacy of price and irregularity in the sale has not been foreclosed).  However, because redemption is generally a sufficient remedy to a grossly inadequate purchase price in the absence of other irregularities or unfairness, *see Pyper I*, 2009 UT App 331, ¶ 25 (Davis, J., dissenting); *Jones v. Johnson*, 761 P.2d 37, ¶ 41 n.2 (Utah Ct. App. 1988) ("Judicial sale of property for less than its fair market value, alone, does not justify setting aside a judicial foreclosure sale, and is *balanced by the right to redeem the property within six months*." (emphasis added)), this circumstance is so rare that we are unaware of any case in our jurisprudence that has actually set aside a sheriff's sale or extended a redemption

---

[3]Other equitable considerations may also "justify setting aside a sheriff's sale such as fraud, accident, mistake, or waiver," *see Pyper II*, 2011 UT 45, ¶ 15 n.13, 258 P.3d 575 (internal quotation marks omitted), but none of these are relevant to our analysis here.

period based on inadequate price alone.[4]  Once again, we find it unnecessary to resolve the legal question of whether it would ever be permissible for a trial court to set aside a sheriff's sale on the basis of inadequate price alone because we determine that, under the circumstances of this case, the trial court was within its discretion to deny Smith's motion in the absence of irregularities.

¶12    The determination of whether to set aside a sheriff's sale is an equitable one in which the trial court is imbued with a "high degree of discretion."  *See Pyper II*, 2011 UT 45, ¶ 24.  Thus, in order to reverse the trial court's decision, we would have "to find that, given the applicable law and facts, the trial court's decision [was] unreasonable." *Id.* (alteration in original) (internal quotation marks omitted).  The propriety of setting aside a sheriff's sale based on inadequacy of price alone is only theoretical, and the inadequacy in this case—$33,000 for $505,000 worth of property, or approximately 1/15 of the market value—while significant, does not present an exceptional discrepancy between the purchase price and the market value.  *Cf., e.g.*, *Pender v. Dowse*, 1 Utah 2d 283, 265 P.2d 644, 646 (1954) (examining the sale of $8,000 worth of property for $47.46, or approximately 1/169 of the market value); *Pyper I*, 2009 UT App 331, ¶¶ 3-4 (examining the sale of $75,000 worth of property for $329, or approximately 1/228 of the market value).  Thus, even "were we inclined to make an exception to the general rule that inadequacy of price alone is insufficient, this case [does not] appear to be a candidate for such an exemption."  *Cf. Pyper I*, 2009 UT App 331, ¶ 12 n.5 (observing that the sale of $75,000 worth of property for $329 presented the type of situation that might justify setting aside a sale without irregularities, but declining "to decide the case on [that] basis").  We therefore conclude that it was within the trial court's discretion to

---

[4]None of the cases cited by Smith upheld a decision to set aside a sheriff's sale or extend the redemption period based on inadequate price alone.  *See Graffam v. Burgess*, 117 U.S. 180, 190-91 (1886) (recognizing irregularities in the sale); *Byers v. Surget*, 60 U.S. 303, 311-12 (1856) (same); *Pender v. Dowse*, 1 Utah 2d 283, 265 P.2d 644, 647-48 (1954) (same); *Young v. Schroeder*, 10 Utah 155, 37 P. 252, 254-55 (1894) (same); *Pyper I*, 2009 UT App 331, ¶¶ 12 & n.5, 16, 224 P.3d 713 (same); *see also Butler v. Haskell*, 4 S.C. Eq. 651, 697-98 (1817) (analyzing inadequacy of price in the context of an attempt to have a contract set aside and acknowledging other circumstances of unfairness), *cited in Young*, 37 P. at 254; *Bangerter v. Petty*, 2010 UT App 49, ¶ 14 n.3, 228 P.3d 1250 (discussing the standards for extending the redemption period only as guidance for the trial court on remand).

determine that the inadequacy of the price in this case was insufficient to justify setting aside the sale without at least a slight accompanying circumstance of unfairness.

## II. The Trial Court Did Not Abuse Its Discretion in Determining that There Were No Irregularities Attending the Sheriff's Sale.

¶13    Next, Smith argues that even if the trial court could appropriately decline to set aside the sale in the absence of irregularities, it erred in determining that there were no irregularities under the circumstances.  As Smith points out, irregularities need not arise from the sale itself in order to support a decision to set aside a sheriff's sale.  *See id.* ¶ 14.  Where there is a gross inadequacy of price, as the trial court found here, "slight circumstances of unfairness in the conduct of the party benefitted by the sale [will] raise [a] presumption of fraud."  *See Pyper II*, 2011 UT 45, ¶ 16 (second alteration in original) (emphasis and internal quotation marks omitted).  Nevertheless, such a presumption may be rebutted.  *See id.* ¶ 20.  Furthermore, we will defer to the trial court's finding that there were no irregularities in the sale of the real property so long as that finding is reasonable.  *See id.* ¶ 24.

¶14    Essentially, Smith's argument is that Meguerditchian and his attorney[5] acted unfairly by failing to provide the officer conducting the sheriff's sale with complete information regarding the location and nature of the personal property because they wanted to obtain the real property and water rights and go into business together to develop and sell these assets.[6]  This situation is factually similar to that considered by the supreme court in *Pender v. Dowse*, 1 Utah 2d 283, 265 P.2d 644 (1954).  In that case, approximately $8,000 worth of real property was sold to satisfy a $22.80 judgment.  *See id.* at 646.  Although notice of the sale was posted on three parcels of the property to be

---

[5]We interpret Smith's arguments regarding irregularities arising from Meguerditchian's attorney's involvement as primarily alleging that the attorney had a motive to act unfairly by concealing the identity of the personal property so that it could not be sold.  To the extent that this argument might be interpreted as alleging that the attorney's forming a limited liability company with Meguerditchian to develop and sell the property was itself an irregularity for which the sale could be set aside, we determine that argument to be without merit.

[6]Initially, Smith asserted that the postponement of the sale from July 7, 2009, to July 10, 2009, constituted an irregularity as well, but he ultimately conceded that point in his reply brief.

sold, the judgment debtor did not receive actual notice of the sale until after it was completed and the sheriff's deed had issued. *See id.* Neither the judgment creditor nor his attorney informed the judgment debtor that the sale was pending, despite having contact with him on a number of occasions prior to the sale. *See id.* Even though "there was enough personal property situated on the real estate sold . . . to more than satisfy the judgment," none of the personal property was levied upon. *See id.* Upon discovering the sale of the property, the judgment debtor sought to have the sale set aside. *See id.* The trial court set aside the sale and the supreme court affirmed, explaining,

> In the instant case there can be no doubt . . . from the facts that [the judgment creditor] knew that the judgment for costs could easily have been satisfied from a levy of personal property known by him to be owned by [the judgment debtor], and which he was *very careful not to direct the sheriff to levy upon and sell*[. This fact,] plus his and his attorney's *studious silence* . . . about their intention to collect the judgment for costs even though they saw [the judgment debtor] and his attorney on several occasions before and after the execution sale, justified the court in concluding the sale was attended by unfairness and was tainted with fraud.

*Id.* at 648 (emphases added).

¶15     There are two major differences between *Pender* and the instant case. First, unlike the judgment creditor in *Pender*, who kept his knowledge of the personal property from the officer conducting the sheriff's sale, Meguerditchian identified and sought a writ of execution for a number of pieces of personal property known to him. The reason the personal property was not sold was that, as the trial court found, the officer was unable to locate the personal property.[7] Second, unlike the judgment debtor

---

[7]Smith implies that Meguerditchian and his attorney engaged in wrongdoing by failing to "supply serial numbers or model numbers or other information to help the officer to identify and seize the . . . personal property." However, Smith, who was fully aware at least as early as June 17, 2009, of the fact that the officer had been unable to locate the personal property, was in the best position to provide the sheriff with the

(continued...)

in *Pender*, who was intentionally kept in the dark about the existence of the sale, Smith was fully aware that the sale of the real property was scheduled and that the personal property would not be sold.

¶16     Furthermore, even assuming that a presumption of fraud may have arisen due to the real property being sold prior to the personal property, Smith's own actions rebutted that presumption.  Throughout the pendency of the sale, Smith maintained that the personal property was exempt from execution because it constituted "tools of his trade."  *See generally* Utah Code Ann. § 78B-5-506(2) (2008) (identifying categories of property exempt from execution).  Where Smith objected to the sale of the personal property in satisfaction of the judgment, he cannot now contest the sale of the alternative real property on the ground that the personal property should have been sold first.  Given that the officer was unable to locate the personal property identified by Meguerditchian, that Smith objected to the sale of personal property, and that Smith was aware of the officer's intention not to sell the personal property, it was reasonable for the trial court to find "that there was nothing misleading regarding the sale of real property[,] . . . no unfairness in the conduct of the purchasing party . . . [, and] nothing irregular in the sale of real property."

III.  The Trial Court Erred in Concluding that Water Right #51-224 Was Not Adequately Described.

¶17     On cross-appeal, Meguerditchian asserts that the trial court erred in setting aside the sheriff's sale with respect to Water Right #51-224.  The notice of sale includes two separate listings of water rights.  The first was described as "[a]ll rights of [Smith] in water right number 51-224, and all other rights of [Smith] in water coming from and the well producing said water."  The trial court ruled that this was an inadequate description of Smith's interest in Water Right #51-224 because "several of the rights included in said water right have been severed off and have individual water right numbers."  The second grouping was described simply as "[o]ther rights of [Smith] in water rights and/or interests in water wells located in Sanpete County, Utah."  The trial

---

[7](...continued)
missing information and thereby enable the sale of the personal property in lieu of the real property.  Smith presents no argument to support his implication that it was Meguerditchian's responsibility to provide the officer with the additional identifying information necessary for the sale.

court found that this description was likewise inadequate. Meguerditchian does not dispute that the sale of all unspecified water rights should be set aside on the ground that they were inadequately described. However, Meguerditchian argues that because Water Right #51-224 was specifically described, the sale should be upheld with respect to the 3.275 acre feet of water remaining in the description of Water Right #51-224 at the time of the sheriff's sale.

¶18    The Utah Rules of Civil Procedure require that notice of a sheriff's sale of real property include "a particular description of the property to be sold" and that "[s]everable lots of real property shall be sold separately." *See* Utah R. Civ. P. 69B(b)(3), (d). The trial court's only explanation for its determination that "[a]ll rights of [Smith] in water right number 51-224" was an inadequate description of the water right to be sold was its observation "that several of the rights included in [Water Right #51-224] have been severed off and have individual water right numbers." However, we cannot see how this fact affected whether "[a]ll rights of [Smith] in water right number 51-224" accurately described a particular property interest as it existed at the time of the sale.[8] The state Water Right Records identified only 3.275 acre feet of water both as being part of Water Right #51-224 and as belonging to Smith. The Water Right Records identified other individuals as holding fractional shares in the remaining acre feet of Water Right #51-224, and indicated that other water rights initially encompassed within the description of Water Right #51-224 had been severed and renumbered. Because anyone who searched the property records would have been able to immediately determine what interest Smith held in Water Right #51-224, the description in the notice provided a sufficiently "particular description of the property to be sold," *id.* R. 63B(b)(3). Thus,

---

[8]We note that the notice of sale of Water Right #51-224 included "all other rights of [Smith] in water coming from and the well producing said water." The trial court focused only on "the rights [of] the Defendants in [W]ater [R]ight #51-224," and neither the trial court nor the parties distinguished any other water rights as being purportedly described by the additional language referring to the well. The trial court's determination that the description was inadequate relied solely on its observation "that several of the rights included in [Water Right #51-224] have been severed off and have individual water right numbers" and did not address the language referring to the well. Thus, we do not address the effect of that language on the adequacy of the description of the water right being sold.

the trial court erred in determining that there were irregularities in the sale of the water right that justified setting the sale aside.[9]

CONCLUSION

¶19    The trial court did not abuse its discretion by concluding that there were no irregularities attending the sale of real property and that, in the absence of irregularities, the inadequate price alone was insufficient to justify setting aside the sheriff's sale. However, the trial court did exceed its discretion in determining that irregularities in the sale of the water rights justified setting aside the sale of Smith's interest in Water Right #51-224.  Thus, we reverse the trial court's decision to set aside the sale of Water Right #51-224 but affirm the trial court's ruling in all other respects.

_____
James Z. Davis, Judge

-----

¶20    WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
Gregory K. Orme, Judge

---

[9]We also note that since only 3.275 acre feet of water remained in Smith's interest in Water Right #51-224 at the time of the sale and the trial court found the water rights to be worth approximately $7,500 per acre foot, the $30,000 Meguerditchian bid for Smith's interest in Water Right #51-224 could not be considered grossly inadequate.  *See supra* note 2.