265 P.2d 644

**PENDER   v.   DOWSE et al.**

No. 7949.

Supreme Court of Utah.

Jan. 18, 1954.

Richards & Bird, Dan S. Bushnell, Salt Lake City, for appellant.

LaMar Duncan, Franklin Riter, Salt Lake City, for defendants and cross-appellants.

Milton V. Backman, L. DeLos Daines, Harlan W. Clark, Salt Lake City, for respondent.

WADE, Justice.

Appeal from a judgment in favor of Rennold Pender, plaintiff below and respondent herein, and against S. W. Dowse, Pearl Dowse, his wife, Jay E. Treadway, Marion Mave Treadway, his wife, and A. C. Whittaker, defendants below and appellants herein.

S. W. Dowse was the purchaser for $47.46 of three parcels of real property containing 19 lots in three separate blocks which had belonged to Rennold Pender and worth about $8,000. These lots were sold on an execution sale to satisfy a judgment for costs in the sum of $22.80 in a case wherein Dowse was the judgment creditor and Pender the judgment debtor. After sheriff's deed issued two of these lots were sold to the Treadways and two others mortgaged to Whittaker. This suit was brought by Pender to void the execution sale, cancel the sheriff's deed on the ground of ir-

regularities and fraud in the sale and to quiet his title against all the defendants and also for damages for slander of title against the defendant S. W. Dowse.

At the trial of the case the evidence disclosed that in 1949 S.W. Dowse had sued Rennold Pender for slander of title and to quiet title to certain real property owned by Dowse. In that case the court found against Dowse on his suit for slander of title but found in his favor on the count to quiet title and entered a judgment quieting title and for costs of suit in the sum of $22.80. A copy of the findings of fact, judgment and decree and a copy of the cost bill were duly served on Pender's attorneys on November 4 and 9, 1949, respectively. Thereafter Dowse's attorney contacted Pender's attorney and inquired whether there was going to be an appeal from the judgment. Upon being told there was no intention to appeal he asked if they would be willing to give Dowse a quitclaim deed so that he could complete a contemplated sale. Pender's attorney advised that a quitclaim deed would be given if Dowse would pay $100 for it. This was done on November 29, 1949. On January 4, 1950, Dowse's attorney caused an execution to issue for collection of the $22.80 judgment for costs and for the expenses of the execution. On his instructions the sheriff on February 9, 1950, levied on 19 lots belonging to Pender. This levy was made by posting notices of the time and place of the execution sale on three parcels of contiguous lots of the real property to be sold and publishing the no-

tice in a newspaper. No actual notice was given Pender or his attorney although Dowse and his attorney saw Pender and his attorney quite a few times before and after the sale. On March 14, 1950, the sale was held and the entire real property was sold en masse to Dowse, through his attorney who was the only bidder present at the sale, for the amount of the cost judgment plus the expenses of the sale. No attempt was made to discover or levy upon any personal property belonging to Pender, although there was enough personal property situated on the real estate sold, consisting of war surplus materials on which were posted signs announcing Pender to be the owner, to more than satisfy the judgment.

Although the notices of the sale were posted on the properties to be sold, for some unexplained reason, Pender who said he visited the properties often and an agent of his who testified he was close to some of them nearly every day, failed to see these notices. Pender only learned of the sale after the sheriff's deed had issued and the sale of two lots to the Treadways and the mortgaging of two other lots to Whittaker by Dowse had taken place. Immediately after the discovery of the execution sale this suit was commenced.

The court as trier of the facts found that there were a number of irregularities in the sale and that the levy was excessive and the sale price grossly inadequate. The court further found that Dowse and Pender agreed to settle all differences arising from

the original case when Dowse paid the $100 and received the quitclaim deed in exchange for Pender's right to appeal, therefore when Dowse subsequently levied on Pender's real property it was not done to satisfy a valid, existing judgment but "was a part of a conspiracy on the part of said defendant S. W. Dowse to deprive plaintiff of his property and to unlawfully obtain title thereto and it was a fraud upon plaintiff." The court then concluded that the delivery of the quitclaim deed to Dowse by Pender effected a complete settlement of the case and thereby entitled Pender to a full satisfaction of the judgment, including costs.

■ There was no evidence that the parties in the first suit had agreed to settle all their differences upon the delivery of the quitclaim deed for $100, rather the evidence was conclusive that the delivery of the deed for the consideration paid was given to forego the right of appeal in order to facilitate a pending sale of the property, rather than to settle all differences between the parties. Mr. Backman, Pender's attorney testified that during negotiations between the parties to settle Dowse's original suit against Pender there was some conversation about the parties each bearing his own costs and that when he learned of the execution sale based on the judgment for costs in that case he went to the office of Mr. Dowse's attorney and "asked him what he meant by having a judgment entered after our agreement, and the conversation in permitting them to take the quiet title—the judgment of quiet title and not having said anything about it over that period of time. I told him that when I delivered the quitclaim deed to Mr. Duncan and he paid the $100 to our office, that I assumed that if they were going to press the cost judgment they would have said something about it, or take it out of the $100 we paid—that would have meant instead of paying us $100 they would pay $22.80 less than the $100 they agreed to pay." This same attorney further testified that the $100 was given to facilitate a sale Dowse had pending of the property involved by foregoing Pender's right of appeal by giving a quitclaim deed. It is apparent from the testimony we have outlined above that the $100 was not given as consideration for an agreement to settle all the differences between the parties upon the delivery of the quitclaim deed but merely proves an assumption by one of the parties' attorneys which assumption was not based on any negotiations prior to the payment but on a hope that because no demand was made for payment of another debt due that the debt would not be collected. The evidence was uncontradicted that the $100 was paid to forego the right of appeal so that a sale could be facilitated and nothing else was discussed during the negotiations leading to the giving of the quitclaim deed. Under such circumstances the court's findings to the effect that there was an agreement to settle all differences between the parties and its conclusion that because of this supposed agreement a full settlement of

the judgment, including costs, had been effectuated, cannot be sustained.

■■ Appellants contend that the court erred in setting aside the execution sale citing a number of cases to the effect that mere irregularities or inadequate consideration are not grounds for setting aside an execution sale after the period of redemption has expired. Even if it were conceded that mere irregularities or inadequacy of price in an execution sale are not sufficient grounds for setting the sale aside after a period of redemption has expired, the lower court in the instant case not only found that the consideration was grossly inadequate and that there were many irregularities, but it further found that a fraud had been practiced on respondent in the sale. It is well settled that equity will intervene and set aside an execution sale or cancel a sheriff's deed, after the redemption period has expired, where it appears the consideration was grossly inadequate and the sale was attended by unfairness and fraud. The territorial court of this state in Young v. Schroeder, 10 Utah 155, on pages 166 and 167, 37 P. 252, on page 254, in setting aside execution sales wherein land worth about $26,000 were sold to satisfy a judgment of about $1,700 and the sales conducted in such a manner at the instigation of the attorneys for the judgment creditor as to bring the least amount and to exhaust the entire holdings of the judgment debtor before satisfying the judgment, made these comments:

" * * * It is insisted by appellants that mere inadequacy of price, however gross, will not authorize the courts to set aside a judicial sale. The general rule undoubtedly is that mere inadequacy of price, alone, does not authorize the disturbance of such a sale; but we are not prepared to sanction the unqualified statement of the rule as put by appellants' counsel. If the inadequacy is so gross as at once to shock the conscience of all fair and impartial minds, if the sacrifice is such that every honest man would hesitate to take advantage of it, it may well be doubted whether every such case would be beyond the power of a court of equity to relieve against."

In support of this statement the court quoted the following from Graffam v. Burgess, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839:

" 'From the cases here cited we may draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property or party interested has been for any other reason mislead or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. *Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise*

*the presumption of fraud.'"* (Emphasis ours.)

In the instant case there can be no doubt of the gross inadequacy of the consideration and from the facts that Dowse knew that the judgment for costs could easily have been satisfied from a levy of personal property known by him to be owned by Pender, and which he was very careful not to direct the sheriff to levy upon and sell, plus his and his attorney's studious silence after the quitclaim deed had been received about their intention to collect the judgment for costs even though they saw Pender and his attorney on several occasions before and after the execution sale, justified the court in concluding the sale was attended by unfairness and was tainted with fraud. It therefore did not err in setting aside the sale and cancelling the sheriff's deed. See also Greenberg v. Kaplan, 277 Mich. 1, 268 N.W. 788; Darden v. Reese, 88 Cal.App.2d 904, 200 P.2d 81; Citizens' State Bank v. McRoberts, 29 Ariz. 173, 239 P. 1028 and Lovejoy v. Americus, 111 Wash. 571, 191 P. 790.

The Treadways and Whittaker contend they are bona fide purchasers for value and therefore the court should have refused to quiet Pender's title as against them. The evidence indicates the Treadways and Whittaker paid valuable considerations for the lots they purchased. However, as stated in 55 Am.Jur. 1066, Sec. 685:

"The parting with a valuable consideration for a conveyance is not in itself sufficient to entitle a person to the protection accorded bona fide purchasers; to be entitled to protection as a bona fide purchaser, the purchase must also have been made in good faith. A purchase with notice is considered a purchase made male fide; * * *."

Anyone examining the record of title to the lots involved herein would have become acquainted with the facts that property worth many thousands of dollars had been sold at an execution sale for a nominal consideration and that no return had been made by the sheriff showing any effort to find and execute on any personal property which the judgment debtor might have owned. These are suspicious circumstances, since it is unreasonable to assume that the owner of real property apparently worth thousands of dollars would knowingly allow it to be sold on a valid execution sale to satisfy a nominal judgment. In Lawley v. Hickenlooper, 61 Utah 298, 212 P. 526, this court pointed out that gross inadequacy of consideration might be sufficient in itself to give notice of infirmities in the title. Appellant Whittaker contends since the enactment of Sec. 78-1-6, Chap. 105, Session Laws of Utah 1945 as amended in Chap. 97, S.L.U.1947, which is now Sec. 57-1-6, U.C.A.1953 gross inadequacy of consideration is no longer notice to a purchaser that others might have outstanding interests in the property. There is no merit to this contention. These sections provide that:

"Neither the fact that an instrument, recorded as herein provided, *recites* only a nominal consideration, nor * * * [other stated facts] shall operate to charge any third person with notice of the interest of any person or persons not named in such instrument or of the grantor or grantors; * * *."
(Italics ours.)

It is to be noted that Sec. 78-1-6 does not provide that a nominal consideration is not such a circumstance as to place a third person on notice of any outstanding interests, but rather the recital of a nominal consideration in a deed or other recorded instrument shall not have that effect. It is a well-known fact that often a conveyance recites a nominal consideration whereas the true consideration is not nominal. It is therefore never certain that the recited consideration is the true consideration. This is not the case in an execution sale. In such a sale there can be no doubt in the mind of the purchaser what was the actual consideration and if the consideration is grossly inadequate, the levy excessive and no return is made by the sheriff of any attempt to levy on personal property as was the showing in the instant case, a purchaser would not be justified in failing to make a reasonable inquiry into the validity of the sale, and if he did not make such inquiry, especially where such a short time had passed since the issuance of the sheriff's deed and the conveyances involved herein, he would not be a bona fide purchaser for value. Whittaker made no inquiries. His testimony conclusively shows that he relied on title insurance rather than on any title his grantor might have and there is no evidence the title insurance company made any inquiries. Whittaker clearly is not a bona fide purchaser for value. The Treadways, through their attorney, did make inquiries, but those inquiries were confined to Dowse's attorney, a source which a reasonable man might expect to be prejudiced and receive answers favoring the validity of the sale. Both the judgment debtor and his attorney were easily available as sources of information and had such inquiries been made they could have been informed of all the facts surrounding the transaction and been made aware of the judgment debtor's claims. Under such circumstances the inquiry they made was not such as would be most likely to disclose the true facts. As stated in 55 Am.Jur. Sec. 703, page 1081 on the sufficiency of inquiry " * * * Moreover, the inquiry must be made at a reliable source from which the true state of facts will be naturally disclosed; it is not sufficient that the purchaser make an inquiry of a person when he knows that it is to such person's interest to misrepresent or conceal the existence of the outstanding interest, and that such person does deny its existence." See also Schroeder v. Toedtemeier, 184 Or. 561, 200 P.2d 606. The trial court's finding that the Treadways also were not bona fide purchasers for value was amply supported by the evidence.

There remains one further question to be decided. Did the court err in

finding Dowse slandered Pender's title and granting attorneys fees and punitive damages? As we have shown above the court erroneously found that the agreement to accept $100 for the quitclaim deed and for Pender's right of appeal was an agreement to settle all the differences between the parties to that suit. Based on this erroneous finding the court further found that Dowse slandered Pender's title when he caused the execution to be issued and levied upon the property which he purchased at the sheriff's sale and that in doing all those acts Dowse acted maliciously. For one to be liable for slander of title he must publish "matter which is *untrue* and disparaging to another's property in land." (Emphasis ours.) See Restatement of the Law on Torts, Vol. 111, Sec. 624, and in Sec. 634 it is stated thus:

> "The publisher of matter disparaging to another's property in land, chattels or intangible things or to the quality thereof is not liable under the rule stated in Secs. 624 and 626–7 unless the disparaging matter, if a statement of fact, is untrue, or, if an expression of opinion, is dishonestly made."

Here Dowse had a valid judgment for costs against Pender. His acts in having the execution issued, levying on the property and having it sold at sheriff's sale all reflected the true nature of the claim, that is, that these actions were taken to satisfy a judgment for costs in the sum of $22.80 and expenses incurred. These facts appeared upon the record and were all true. Being true, they could not be the basis for a suit for slander of title and the court therefore erred in granting attorneys fees as special damages for slander of title and punitive damages for the malice involved.

The judgment of the lower court is therefore reversed as to its granting of attorneys fees and punitive damages and affirmed in all other respects.

Each party to bear his own costs.

McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

WOLFE, C. J., does not participate.