2009 UT App 331

**David PYPER and Estate of Mollie Maxine Pyper, Petitioners and Appellee,**

v.

**Justin C. BOND, Dale M. Dorius, and Alison D. Bond, Respondents and Appellants.**

No. 20080906–CA.

Court of Appeals of Utah.

Nov. 13, 2009.

Jennifer D. Reyes, Brigham City, for Appellants.

J. Bryan Quesenberry, Provo, for Appellee.

Before Judges GREENWOOD, DAVIS, and THORNE.

## OPINION

THORNE, Judge:

¶1 Justin C. Bond, Dale M. Dorius, and Alison D. Bond (Respondents) appeal from the district court's final judgment setting aside a sheriff's sale of real property belonging to David Pyper. We affirm.

## BACKGROUND

¶2 In 2002, Pyper hired attorney Justin C. Bond to represent him in a probate matter.[1] At that time, Bond was employed by the law firm of Dorius, Bond, Reyes, and Linares (DBR & L). Bond's representation of Pyper resulted in attorney fees slightly in excess of $9000, which Pyper failed to pay.

¶3 Bond sued Pyper to obtain payment of the fees, and on March 1, 2006, the district court entered a judgment in Bond's favor in the amount of $10,577.23. To satisfy this judgment, Bond levied against a house (the property) belonging to Pyper. A properly noticed sheriff's sale of the property took place on November 9, 2006, and Bond was the only bidder to attend the sale. Bond purchased the property for a $329 bid that was credited to his judgment against Pyper.

¶4 At the time of the sale, the property was worth approximately $125,000. There was a mortgage against the property of approximately $40,000 to $50,000. Thus, a conservative estimate of Pyper's equity in the property at the time of the sale is $75,000. Bond was aware of at least the existence of the mortgage when he placed his winning bid on the property.

¶5 Pyper wanted to redeem the property, and on April 20, 2007, he called DBR & L and asked for a judgment lien payoff amount. No one called him back. On April 25, he again called DBR & L and spoke with Dorius, another DBR & L attorney.[2] Pyper and Dorius discussed terms for satisfying the judgment against Pyper, and Dorius informed Pyper that Dorius needed to talk to Bond about it. Thereafter, Pyper called DBR & L every day, making approximately twenty-eight phone calls with no response from either Bond or Dorius.

¶6 On or about May 8, the 180–day time period for redemption of the property under rule 69C of the Utah Rules of Civil Procedure expired. *See* Utah R. Civ. P. 69C(d). On May 16, a sheriff's deed was issued, transferring the property to Bond. On May 17, Bond and Pyper spoke about satisfying the judgment. Bond informed Pyper that Dorius was in charge of the judgment and told Pyper that Bond would call Pyper back, but that did not happen. Pyper continued calling Bond and Dorius on a near-daily basis through May 30.

¶7 On May 30, Pyper's present counsel called Dorius to request a payoff amount.

1. Alison D. Bond's interest in this matter is solely as the ultimate transferee of an interest in the subject property. All further references to Bond refer only to Justin C. Bond.

2. Bond was no longer employed by DBR & L at this time.

Dorius promised Pyper's counsel that he would get back to him by the end of the week, but again, that did not happen. After about two weeks of more unreturned phone calls, Pyper's counsel sent Dorius a letter regarding the matter. Respondents' counsel replied by letter stating that the redemption period had expired. On or about June 26, Pyper paid $349.27 to the district court in an attempt to comply with rule 69C, *see id.* R. 69C(e)-(f) (setting redemption price and allowing for payment of disputed price to the court), and filed his Petition to Set Aside Sheriff's Sale and to Redeem Property. Respondents opposed Pyper's petition on the ground that the redemption period had expired.

¶ 8 On June 23, 2008, the district court held an evidentiary hearing at which Bond, Dorius, and Pyper all testified. Thereafter, the district court issued its memorandum decision setting aside the sheriff's sale of the property. Among the district court's findings were that the sale price of the property was "grossly inadequate" such that it "shocks the conscience of an impartial mind" and "an honest man would hesitate to take advantage of it." The district court further found that Bond's and Dorius's actions amounted to at least " 'slight circumstances of unfairness' " to Pyper. The district court then concluded that the gross inadequacy of the sales price, together with Bond's and Dorius's unfair actions, gave the court the equitable power to set aside the sheriff's sale despite the expiration of the redemption period. Respondents appeal from the final order implementing the memorandum decision.

## ISSUE AND STANDARD OF REVIEW

¶ 9 Respondents argue that the district court misconstrued existing case law governing its equitable power to set aside a sheriff's sale and, thus, erred in setting aside the sale of the property after the time period for redemption had expired. Respondents' argument presents a question of law that we review for correctness. *See Ellis v. Estate of Ellis,* 2007 UT 77, ¶ 6, 169 P.3d 441 ("[T]he district court's interpretation of prior prece-

dent, statutes, and the common law are questions of law that we review for correctness.").

## ANALYSIS

 ¶ 10 It is long established in Utah law that "a court, sitting in equity, may in appropriate instances extend the [redemption] period." *See Mollerup v. Storage Sys. Int'l,* 569 P.2d 1122, 1124 (Utah 1977); *see also Young v. Schroeder,* 10 Utah 155, 37 P. 252 (1894), *aff'd,* 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896). Equitable extension of the redemption period, if justified by the circumstances, may take place either before or after the expiration of the redemption period. *See Huston v. Lewis,* 818 P.2d 531, 535 (Utah 1991) ("[I]n exceptional circumstances, a court sitting in equity may extend a redemption period or set aside a sheriff's sale after the period for redemption." (footnote omitted)). However, "a court should take such an action only when the equities of the case are compelling and move the conscience of the court." *Id.* (internal quotation marks omitted). Respondents argue that this case does not present the exceptional circumstances required to allow the setting aside of the sheriff's sale of the property after the expiration of the redemption period and that the district court erred when it interpreted existing case law to allow such a result.

 ¶ 11 The seminal Utah case on equitable extension of redemption periods is *Young v. Schroeder,* 10 Utah 155, 37 P. 252 (1894), *aff'd,* 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896). Respondents argue that *Young* established a two-part test for equitable extensions: (1) "gross inadequacy of price" and (2) "irregularities attending the sale." *See id.* at 254. Respondents further argue that the district court failed to apply the second prong of the *Young* test and relied solely on inadequacy of price to set aside the sale of the property. We accept Respondents' two-part test as a general statement of the appropriate method for establishing the district court's authority to grant equitable extensions.[3] However, we disagree both with Re-

---

**3.** We express no opinion on whether Respondents' two-part test represents the exclusive ave-

nue for a district court to extend the redemption period.

spondents' argument that the district court failed to apply both prongs of the test and with Respondents' narrow interpretation of the irregularities prong.

¶ 12 It is clear that the district court considered both inadequacy of price and irregularities attending the sale in rendering its decision. Quoting *Young*, the district court made the following statement regarding irregularities attending the sale:

> A moving party is not required to prove fraud in the purchase of property for an inadequate price. "Slight circumstances of unfairness in the conduct of the party benefited by the sale" are enough to raise "the presumption of fraud." Therefore, the [c]ourt should consider any unfairness in the conduct of a purchasing party.

(Citations omitted.)[4] The district court further concluded, again using the language of *Young*, that Bond's and Dorius's actions "amount[ed] to 'slight circumstances of unfairness' to [Pyper]" and that "[g]reat inadequacy of price coupled with unfairness raise[s] a presumption of fraud on Respon-

dents' behalf." Thus, Respondents are incorrect when they argue that the district court failed to consider *Young*'s irregularity prong before setting aside the sale of the property.[5]

¶ 13 Having concluded that the district court applied both prongs of the *Young* test, we turn to the question of whether it did so properly under the circumstances. The two-part test urged by Respondents is distilled from a larger quote from *Young*:

> All the cases unite in the doctrine that on gross inadequacy of price, coupled with irregularities attending the sale, especially where such irregularities are not merely formal and technical, but such as have a direct tendency to prevent the realizing of a fair price for the property sold, and are attributable to the purchaser at the sale, it is the duty of the courts to set the sale aside, unless the complaining party is estopped by his own laches.

37 P. at 254. The district court's ruling expressly found such an inadequacy of price. And, although couched in terms of circumstances of unfairness,[6] the district court also

---

4. Respondents argue that the language quoted by the district court comes not from the holding of *Young*, but rather from *Young*'s quotation of an even earlier case, *Graffam v. Burgess*, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886). *See Young v. Schroeder*, 10 Utah 155, 37 P. 252, 254 (1894), *aff'd*, 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896). While Respondents are correct that the quoted language does not come directly from *Young*'s holding, we note that *Young* quoted *Graffam* favorably. *See id.* We further note that the Utah Supreme Court has subsequently repeated—and emphasized—the same *Graffam* language employed in *Young* and by the district court. *See Pender v. Dowse*, 1 Utah 2d 283, 265 P.2d 644, 648 (1954) (" 'Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud.' " (quoting *Graffam*, 117 U.S. at 192, 6 S.Ct. 686)).

5. We note that, contrary to Respondents' argument, *Young* did not absolutely foreclose the possibility of equitable extension of a redemption period based solely on inadequacy of price. On this subject, the *Young* court stated,

> It is insisted by appellants that mere inadequacy of price, however gross, will not authorize the courts to set aside a judicial sale. The general rule undoubtedly is that mere inadequacy of price, alone, does not authorize the disturbance of such a sale; but we are not prepared to sanction the unqualified statement of the rule as put by appellants'

counsel. If the inadequacy is so gross as at once to shock the conscience of all fair and impartial minds, if the sacrifice is such that every honest man would hesitate to take advantage of it, it may well be doubted whether every such case would be beyond the power of a court of equity to relieve against.

*Young*, 37 P. at 254; *accord Pender*, 265 P.2d at 648 (quoting from *Young*).
We do not disagree with the district court's determinations that the sale of Pyper's $75,000 of equity in the property for $329 both "shocks the conscience of an impartial mind" and was "[such a] sacrifice of [Pyper's] property . . . that an honest man would hesitate to take advantage of it." Thus, if we were inclined to make an exception to the general rule that inadequacy of price alone is insufficient, this case would appear to be a candidate for such an exception. We do not, however, elect to decide the case on this basis.

6. We note that the district court obtained the phrase "slight circumstances of unfairness" from the *Young* decision, where it is located in the sentence immediately preceding the language cited by Respondents as the source of their two-part test. *See* 37 P. at 254 (" 'Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud.' All the cases unite . . . ." (quoting *Graffam*, 117 U.S. at 192, 6 S.Ct. 686)).

made findings pertaining to Bond's and Dorius's interactions with Pyper regarding redemption after the sale had occurred. Respondents argue that the circumstances of unfairness found by the district court do not constitute irregularities attending the sale for purposes of the *Young* analysis. We disagree.

¶ 14 Respondents argue that *Young*'s "irregularities attending the sale," *see id.*, must be irregularities in the sale itself, not the redemption process. But this reading ignores the underlying facts in *Young*. There were, to be sure, irregularities with the sale itself in *Young*, but the court also relied on the purchasers' conduct *after* the sale. In particular, prior to the expiration of the redemption period, the *Young* purchasers assured the debtor "that the statutory period would not be insisted upon." *Id.* at 256. While there are no such affirmative representations in the instant case, *Young* nevertheless relied, in part, on post-sale events to reach the equitable result of setting aside the sale.

¶ 15 We also find support for the district court's ruling in a somewhat more recent case, *Pender v. Dowse*, 1 Utah 2d 283, 265 P.2d 644 (1954). In *Pender*, a judgment creditor purchased real property worth about $8000 for $47.46 to satisfy a judgment of $22.80. *See id.* at 646. After the redemption period had expired, the judgment debtor petitioned the district court to set aside the sale. The district court did so, relying on the great inadequacy of price and two additional factors: (1) the creditor's failure to levy upon and sell the debtor's personal property, which was known to the creditor and of sufficient value to easily cover the judgment, and (2) the creditor and his attorney's "studious silence" about their intent to collect the judgment, despite repeated contact with the debtor and his attorney both before and after the execution sale. *See id.* at 648. Neither of these circumstances can be characterized as irregularities in the sale itself, which was

apparently properly noticed and conducted. *See id.* at 646. Nevertheless, the Utah Supreme Court affirmed the district court, holding that the creditors' actions "justified the [district] court in concluding the sale was attended by unfairness and was tainted with fraud." *Id.* at 648.

¶ 16 We conclude that the district court's ruling here comports with the principles applied in *Young* and *Pender*. The inadequacy of the price that Respondents paid for the property is very great. And we cannot disagree that Bond's and Dorius's actions present some circumstances of unfairness toward Pyper, however slight, relating to the sale of the property. The district court found that Pyper asked DBR & L for a judgment lien pay-off amount more than two weeks before the expiration of the redemption period and actually spoke with Dorius about the matter on April 25, 2007. By the time the redemption period expired on May 8, Pyper had made at least a dozen unanswered phone calls to DBR & L regarding redemption of the property. As in *Pender*, these calls were met only with "studious silence." *See id.* After the expiration date, Bond and Dorius continued to lead Pyper to believe that they were working toward redemption of the property until early June 2007, when counsel for Respondents informed Pyper that the redemption period had expired. Pyper petitioned the district court promptly thereafter.

¶ 17 Pyper did not, in fact, need Bond and Dorius's assistance in order to redeem the property. *See* Utah R. Civ. P. 69C(f) (allowing for commencement of the redemption process despite a dispute over the redemption price). However, Pyper's conversation with and repeated phone calls to Dorius prior to the expiration of the redemption period placed Respondents on reasonable notice that Pyper was not aware that he could initiate redemption without their participation. As Pyper's former counsel, Bond and Dorius had some obligation not to take advantage of Pyper's known ignorance.[7] *Cf.*

---

7. Bond's and Dorius's status as attorneys is of some relevance to this case. In *Young*, the court stated, "A purchase by an attorney for his own benefit at a sale over which he has exercised any

direction or control should always be closely scrutinized by the court." 37 P. at 255–56.

*Young* also allowed for late redemption against one attorney based on representations made by the attorney's law partner. *See id.* at 256. This

*Kilpatrick v. Wiley, Rein & Fielding,* 2001 UT 107, ¶¶ 52–53, 37 P.3d 1130 (discussing continuing nature of attorney's duties of confidentiality and loyalty after termination of attorney-client relationship). Their doing so, combined with the very great inadequacy in purchase price, justifies the district court's setting aside of the sheriff's sale in this case. *See generally Pender,* 265 P.2d at 648 ("Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud." (emphasis and internal quotation marks omitted)).

¶ 18 Despite our conclusion, we are not unsympathetic to Respondents' argument that Utah law provides many other safeguards to protect judgment debtors and that because of such safeguards, courts should be reluctant to extend redemption periods. In particular, rule 69C(f) prevents creditors from obstructing the redemption process by refusing to participate therein. *See* Utah R. Civ. P. 69C(f) (addressing disputes over redemption price); *Granada, Inc. v. Tanner,* 712 P.2d 254, 256 (Utah 1985) ("The intent of [former] Rule 69(f)(3) is to allow a redemptioner to pay the funds into court so that the holder of the certificate of sale cannot clog the equity of redemption by refusing to cooperate in the redemption process."). In light of rule 69C(f), we decline to recognize any duty on the part of a sheriff's sale purchaser to affirmatively cooperate with an attempted redemption. Here, however, Bond's and Dorius's words and actions represented, at least implicitly, that they were going to participate in the redemption process. It is their failure to act in accordance with this representation that justifies the district court's finding of unfairness warranting relief.

¶ 19 Respondents also argue that affirming the district court's ruling in this case will make it almost impossible to effectively lien property to collect a judgment because "every creditor would have to analyze their purchase price against the value of the property being sold to determine whether there is a gross inadequacy of price." This argument rests on Respondents' erroneous reading of the district court's judgment as extending Pyper's redemption period based solely on inadequacy of price. As explained above, the district court properly relied on both inadequacy of price and the unfair actions of Bond and Dorius when it allowed Pyper's untimely redemption of the property. Thus, creditors and other purchasers at sheriff's sales can ensure the ultimate finality of their purchases either by bidding a reasonably adequate price to begin with or, failing that, by scrupulously avoiding unfair treatment of the debtor. These options are long-established by existing case law, *see generally Young v. Schroeder,* 10 Utah 155, 37 P. 252 (1894), *aff'd,* 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896), and we reject Respondents' contention that affirming the district court's judgment will frustrate the collections process.

CONCLUSION

¶ 20 We conclude that the district court possessed the equitable power to set aside the sheriff's sale of the property after the expiration of the redemption period. Although this is a close case, the district court found both great inadequacy of the sales price and slight circumstances of unfairness on the part of Bond and Dorius. Together, these findings served to vest the district court with the authority to set aside the sale under prior precedents. Accordingly, we affirm the judgment of the district court.

¶ 21 I CONCUR: PAMELA T. GREENWOOD, Presiding Judge.

DAVIS, Judge (dissenting):

¶ 22 I dissent from the majority opinion. I cannot agree that the circumstances here were sufficient to constitute the "exceptional circumstances" required for disturbing a sheriff's sale, *see Huston v. Lewis,* 818 P.2d 531, 535 (Utah 1991).

¶ 23 First, as recognized by the majority, there was no irregularity in the sale itself. And even if my colleagues are correct that

latter aspect of *Young* eases any concerns we might otherwise have had with disturbing Bond's purchase based on Dorius's actions, where Bond himself made no unfair statements to Pyper until *after* the redemption period had expired.

the term "irregularities attending the sale" can include a purchaser's conduct after the sale, I do not agree that such irregularities were present here. Indeed, the two cases relied on for this point involve some kind of affirmative actions or representations directly aimed at impeding redemption, not the mere failure to do something as minor as return telephone calls. *See Pender v. Dowse,* 1 Utah 2d 283, 265 P.2d 644, 648 (1954) (relying on "the facts that [the purchaser] knew that the judgment for costs could easily have been satisfied from a levy of personal property known by him to be owned by [the debtor], and which *he was very careful not to direct the sheriff to levy upon and sell,* plus his and his attorney's *studious silence* after the quitclaim deed had been received about their intention to collect the judgment for costs *even though they saw [the debtor] and his attorney on several occasions* before and after the execution sale" (emphases added)); *Young v. Schroeder,* 10 Utah 155, 37 P. 252, 256 (1894) ("[T]he plaintiff was *assured* by [the purchaser], before the period for redemption had expired, that the statutory period would not be insisted upon[.]" (emphasis added)), *aff'd,* 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896). Had Bond or Dorius made some sort of affirmative representation to induce Pyper to forgo redemption, I would be inclined to concur in part with the decision reached by the majority. But I simply do not believe that Bond and Dorius's alleged omission in not returning telephone calls rises even to "slight circumstances of unfairness," *see Young,* 37 P. at 254. *See generally Webster's Ninth New Collegiate Dictionary* 1288 (1986) (defining "unfair" as "marked by injustice, partiality, or deception").[1]

¶ 24 Moreover, a purchaser at a sheriff's sale is under no obligation to communicate with the judgment debtor at all—a point that the majority apparently concedes, *see supra* ¶ 18. And I do not see that Bond and Dorius's position as Pyper's former counsel changes this rule, particularly under these circumstances. Although duties of confidentiality and loyalty continue beyond representation, I do not see how this requires Bond and Dorius to ascertain and correct Pyper's misunderstandings of the legal process, particularly when Pyper was both aware that there was some deadline for redeeming the property and was, apparently, represented by different legal counsel. Pyper could have easily obtained the necessary redemption information from the district court and could have paid the court in order to exercise his right of redemption, all without any assistance from Bond and Dorius. Indeed, he eventually, although belatedly, did just that.

¶ 25 Absent an irregularity of a nature heretofore described, the low bid is irrelevant. Indeed, the remedy for such a low-ball bid *is* the right of redemption, which a judgment debtor has six months to exercise. *See* Utah R. Civ. P. 69C. Thus, the very fact that the amount of the bid was so low actually benefitted Pyper. He had six months to tender a mere $329 to redeem his property, thereby rendering it unavailable to satisfy the judgment, yet he failed to do so.

¶ 26 In sum, this case sets unwise precedent. Now all a judgment debtor need do to have the sheriff's sale set aside is, after sitting idly by for ninety percent of the redemption period, allege that he made several unreturned telephone calls in the final two weeks and, any time after the sheriff's deed is delivered, attack the sale. Under the reasoning of the majority, virtually any sheriff's sale is now vulnerable, as is the sheriff's deed and any deeds to subsequent grantees. I would therefore reverse the decision of the district court.

---

1. The majority reasons that Bond and Dorius's actions implicitly represented a willingness to participate in the redemption process. *See supra* ¶ 18. I do not agree, and in any event, I disagree that any such implicit message would be sufficient to meet the standard here. More importantly, the majority's reasoning about an implicit representation is not supported by the findings and conclusions of the district court. Instead, the district court simply determined that irregularities existed because "[Bond and Dorius] did not return [Pyper]'s telephone calls and did not inform him that once the property was sold, the judgment could not be paid off to redeem the property."