2011 UT 45

**David PYPER and Estate of Mollie Maxine Pyper, Plaintiffs and Respondents,**

v.

**Justin C. BOND, Dale M. Dorius, and Alison D. Bond, Defendants and Petitioners.**

No. 20091025.

Supreme Court of Utah.

July 29, 2011.

J. Bryan Quesenberry, Provo, for plaintiffs.

Jennifer D. Reyes, Brigham City, for defendants.

Associate Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 We granted certiorari in this case to determine whether the court of appeals erred in its construction and application of the standard for setting aside a sheriff's sale. To resolve this question, we must address two distinct issues. First, we must decide whether the court of appeals erred in concluding that gross inadequacy of price together with slight circumstances of unfairness may justify setting aside a sheriff's sale. Second, if we agree with the court of appeals' construction of the standard for setting aside a sheriff's sale, we must determine whether the court of appeals erred in holding that the facts in this case involved slight circumstances of unfairness.

¶ 2 We hold that the court of appeals did not err in concluding that gross inadequacy of price together with slight circumstances of unfairness may justify setting aside a sheriff's sale. This is because a showing of both gross inadequacy of price and slight circumstances of unfairness gives rise to a presumption of fraud, which, unless rebutted, may constitute a compelling circumstance that justifies setting aside a sheriff's sale. We further hold that the court of appeals did not err in affirming the district court's conclusion that the Appellant's conduct created, at least, slight circumstances of unfairness. We therefore affirm the court of appeals' decision.

## BACKGROUND

¶ 3 In 2002, David Pyper hired Justin Bond, an attorney, to represent him in a probate matter. At the time, Mr. Bond was employed by the law firm of Dorius, Bond, Reyes, and Linares (the Law Firm or the Firm). The Law Firm charged Mr. Pyper $9,064.82 in attorney fees for Mr. Bond's representation of Mr. Pyper. Despite several requests by the Firm, Mr. Pyper failed to pay these fees.

¶ 4 The Law Firm subsequently sued Mr. Pyper in an effort to obtain payment of the

attorney fees. In 2006, the district court entered a judgment in the Law Firm's favor in the amount of $10,577.23. To satisfy this judgment, Mr. Bond filed a lien against a house owned by Mr. Pyper. At the time the lien was filed, the house had an estimated value of approximately $125,000.

¶ 5 In November 2006, a properly noticed sheriff's sale was held at which Mr. Pyper's home was auctioned. Mr. Bond was the only bidder at the sale. Mr. Bond purchased Mr. Pyper's home with a bid of $329.

¶ 6 On April 20, 2007, Mr. Pyper called the Law Firm and expressed his desire to redeem his property. During the phone call, Mr. Pyper asked the Firm to provide him with a judgment lien payoff amount. An employee of the Firm told Mr. Pyper that an attorney would return his call, but no one contacted Mr. Pyper.

¶ 7 On April 25, Mr. Pyper called the Law Firm again and spoke with Dale Dorius, an attorney at the Firm. During this conversation, Mr. Pyper told Mr. Dorius that he wanted to satisfy the judgment against him and offered to pay $8,500 to do so. Mr. Dorius stated that he needed to talk to Mr. Bond about the offer, but no one at the Firm ever contacted Mr. Pyper with an answer. After his conversation with Mr. Dorius, Mr. Pyper called the Law Firm every day for the next twenty-eight days but was unable to speak with Mr. Bond or Mr. Dorius.

¶ 8 On or about May 8, 2007, the 180–day period in which a debtor may redeem property sold at a sheriff's sale expired. Shortly thereafter, the deed to Mr. Pyper's home was transferred to Mr. Bond. On May 17, 2007, Mr. Pyper spoke with Mr. Bond about satisfying the judgment against him and informed Mr. Bond that he had the money to do so. Mr. Bond told Mr. Pyper that he needed to speak with Mr. Dorius about the issue and that he would call Mr. Pyper back. No one returned Mr. Pyper's call. Mr. Pyper continued calling Mr. Bond and Mr. Dorius on a near-daily basis for the next two weeks.

¶ 9 On May 30, 2007, an attorney representing Mr. Pyper contacted Mr. Dorius and requested a payoff amount. Mr. Dorius promised Mr. Pyper's attorney that he would get back to him with an amount by the end of the week, but Mr. Dorius did not do so. After approximately two more weeks of unanswered phone calls, Mr. Pyper's attorney sent Mr. Dorius a letter regarding Mr. Pyper's desire to satisfy the judgment against him and to redeem his property. An attorney representing the Law Firm responded to the letter and informed Mr. Pyper that his redemption period had expired.

¶ 10 After learning that the redemption period had expired, Mr. Pyper filed a petition in the district court seeking to set aside the sheriff's sale of his property. In June 2008, the district court held a hearing on the petition, during which Mr. Bond, Mr. Dorius, and Mr. Pyper testified. Sometime after the hearing, the district court issued a memorandum decision in which it concluded that the sale price of Mr. Bond's property was so "grossly inadequate" as to "shock[ ] the conscience of an impartial mind." The district court also concluded that Mr. Bond and Mr. Dorius's conduct amounted to at least "slight circumstances of unfairness" to Mr. Pyper. Based on these conclusions, the district court set aside the sheriff's sale of Mr. Pyper's property.

¶ 11 Mr. Bond and Mr. Dorius (collectively, the Appellants) timely appealed the district court's decision to the Utah Court of Appeals.[1] The court of appeals affirmed the district court's decision to set aside the sheriff's sale.[2] In so doing, the court of appeals noted that it agreed with the district court's conclusion that the facts of the case involved both gross inadequacy of price and, at least, slight circumstances of unfairness.[3] Specifically, the court of appeals concluded that the Appellants' "*words* and *actions* represented, at least implicitly, that they were going to participate in the redemption process" and that it was "their failure to act in accordance with this representation that justifie[d] the district court's finding of unfairness warrant-

---

1. *See Pyper v. Bond*, 2009 UT App 331, 224 P.3d 713.

2. *Id.* ¶ 20.

3. *Id.* ¶ 16.

ing relief." [4]  Finally, the court of appeals explained that the district court's findings of both great inadequacy of price and slight circumstances of unfairness had "vest[ed] the district court with the authority to set aside the [sheriff's] sale [of Mr. Pyper's property] under prior precedents." [5]

¶ 12 Mr. Bond and Mr. Dorius then filed a petition for certiorari, which we granted. On certiorari, Mr. Bond and Mr. Dorius argue that the court of appeals' decision should be reversed because it conflicts with this court's precedent concerning the standard for setting aside a sheriff's sale. We have jurisdiction to hear this appeal pursuant to section 78A–3–102(3)(a) of the Utah Code.

### STANDARD OF REVIEW

¶ 13 "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law." [6]

### ANALYSIS

### I. THE COURT OF APPEALS DID NOT ERR IN ITS CONSTRUCTION OF THE STANDARD FOR SETTING ASIDE A SHERIFF'S SALE

¶ 14 The right of redemption from a sheriff's sale is a statutory right provided in section 78B–6–906 of the Utah Code.[7]  That section states that "[s]ales of real estate under judgments of foreclosure of mortgages and liens are subject to redemption." [8]  The procedures for exercising the right to redemption are set out in rule 69C of the Utah Rules of Civil Procedure.[9]  In relevant part, this rule provides that a person seeking to redeem property sold through a sheriff's sale must pay the amount of the bid within *six months* after the sale.[10]

¶ 15 In most instances, "strict compliance with the six-month redemption period is … required." [11]  But in some circumstances "a court sitting·in equity may extend a redemption period or set aside a sheriff's sale after the period for redemption" has expired.[12]  For instance, we have indicated that a court may set aside a sheriff's sale where (1) a debtor's property is sold at a grossly inadequate price and (2) there were irregularities during the sale that contributed to the inadequacy of price or circumstances of unfairness during the redemption period caused by the conduct of the party benefitted by the sale.[13]  These factors operate on a sliding scale. Thus, the greater the disproportionality in price, the less unfairness or fewer irregularities a party must demonstrate before a court may justifiably extend a redemption period or set aside a sheriff's

---

4. *Id.* ¶ 18 (emphases added).

5. *Id.* ¶ 20.

6. *State v. White*, 2011 UT 21, ¶ 14, 251 P.3d 820.

7. Utah Code Ann. § 78B–6–906 (2008).

8. *Id.* § 73B–6–906(1).

9. *See* Utah R. Civ. P. 69C.  We note that the Utah Rules of Civil Procedure were enacted by this court and not by the Utah Legislature.

10. *See id.*

11. *Huston v. Lewis*, 818 P.2d 531, 535 .(Utah 1991).

12. *Id.*

13. *See, e.g., Pender v. Dowse*, 1 Utah 2d 283, 265 P.2d 644, 647–48 (1954); *First Nat'l Bank v. Haymond*, 89 Utah 151, 57 P.2d 1401, 1405 (1936) ("It is quite generally held that substantial inadequacy of price, coupled with fraud, mistake, or other unfair dealing is sufficient to justify a court of equity upon timely motion to set aside the sale and order a resale."); *Young v. Schroeder*, 10 Utah 155, 37 P. 252, 254 (Utah Terr. 1894); *see also* Charles C. Marvel, Annotation, *Inadequacy of Price as Basis for Setting Aside Execution or Sheriff's Sale*, 5 A.L.R.4th 794 (2011) ("Although it is infrequently held that a grossly inadequate price in itself justifies setting aside an execution sale, virtually all courts recognize that inadequacy of price, in some degree, combined with some form of other circumstances, especially those indicative of fraud or unfairness on the part of the purchaser, or mistake, does justify the setting aside of an execution sale, or, as it sometimes happens, justifies allowing late redemption of the property."). We have also recognized other circumstances that may justify setting aside a sheriff's sale such as "fraud, accident, mistake, or waiver." *J.A. Mollerup v. Storage Sys. Int'l*, 569 P.2d 1122, 1124 (Utah 1977).

sale.[14]

■ ¶16 For example, in *Young v. Schroeder*, the Supreme Court for the Territory of Utah noted that " '[g]reat inadequacy [of price] requires *only slight* circumstances of unfairness in the conduct of the party benefitted by the sale to raise [a] presumption of fraud' " and to justify setting aside a sale.[15] Similarly, in *Pender v. Dowse*, we noted that "[i]t is well settled that equity will intervene and set aside an execution sale or cancel a sheriff's deed, after the redemption period has expired, where it appears [that] the consideration was grossly inadequate and the sale was attended by unfairness and fraud." [16]  In *Pender*, we also reiterated that "great inadequacy [of price] requires only slight circumstances of unfairness in the conduct of the party benefitted by the sale to raise the presumption of fraud." [17]

■ ¶17 We revisited the standard for setting aside a sheriff's sale in *Huston v. Lewis*.[18]  In *Huston*, we reaffirmed our prior opinions, stating that "a court sitting in equity may extend a redemption period or set aside a sheriff's sale after the period for redemption." [19] We noted, however, that "a court should take such an action *only* when the equities of the case are compelling and move the conscience of the court." [20]

¶18 In the instant case, the Appellants argue that the court of appeals erred in two respects in concluding that the district court's findings of "both great inadequacy of the sales price and slight circumstances of unfairness . . . served to vest the district court with the authority to set aside the sale." [21]  First, they contend that this court created a "new" and "heightened" standard for setting aside a sheriff's sale in *Huston.* Second, they argue that because this "new" standard requires "compelling" circumstances, it is no longer sufficient to demonstrate great inadequacy of price and slight circumstances of unfairness.  Instead, they claim that a party must now demonstrate great inadequacy of price and *substantial* unfairness.  We are not persuaded.

■ ¶19 As an initial matter, we disagree with the Appellants' contention that our statement in *Huston*—that "a court should [set aside a sheriff's sale] *only* when the equities of the case are compelling and move the conscience of the court" [22]—created a "new" or "higher" standard for setting aside a sheriff's sale in Utah. Rather than creating a new standard, our statement in *Huston* merely synthesized and articulated the standard that we have consistently applied in our cases in the sheriff's sale context.[23]  In other words, our review of our precedent concerning sheriff's sales indicates that this court has always required that a party demonstrate a compelling circumstance that "moves the conscience of the court" before a district court is vested with equitable authority to extend a redemption period or set aside a sheriff's sale.[24]  In fact, we supported our statement in *Huston* by citing directly to early cases in the sheriff's sale context, including *Young,* which was decided in 1894.[25] Thus, to the extent that there is any ambiguity, we clarify that our statement in *Huston*

14.  *See, e.g., Pender,* 265 P.2d at 647–48; *Young,* 37 P. at 254; *see also* Marvel, *supra* note 13, at 794 ("[C]ases from numerous jurisdictions have contained statements [that] . . . a court is justified [in setting aside a sheriff's sale] where the gross inadequacy of price is accompanied by slight circumstances indicative of unfairness, or where the sale is affected by slight irregularities." (internal quotation marks omitted)).

15.  37 P. at 254 (emphasis added) (quoting *Graffam v. Burgess,* 117 U.S. 180, 192, 6 S.Ct. 686, 29 L.Ed. 839 (1886)).

16.  265 P.2d at 647.

17.  *Id.* at 648 (internal quotation marks omitted).

18.  818 P.2d 531 (Utah 1991).

19.  *Id.* at 535 (footnote omitted).

20.  *Id.* (emphasis added) (internal quotation marks omitted).

21.  *Pyper v. Bond,* 2009 UT App 331, ¶20, 224 P.3d 713.

22.  818 P.2d at 535 (emphasis added) (internal quotation marks omitted).

23.  *See, e.g., id.*

24.  *See Pender,* 265 P.2d at 648.

25.  *See Huston,* 818 P.2d at 535–36.

was simply intended to emphasize the limited circumstances in which a court should exercise its equitable authority to set aside a sheriff's sale and that it was not intended to create a new or heightened standard.

¶ 20 We also disagree with the Appellants' argument that a showing of gross inadequacy of price together with slight circumstances of unfairness is not sufficient to set aside a sheriff's sale. As noted above, we have consistently stated that "great inadequacy [of price] requires only slight circumstances of unfairness in the conduct of the party benefitted by the sale to raise the *presumption of fraud.*" [26] And we now clarify that, unless the presumption is rebutted, a court may justifiably find that a showing of gross inadequacy of price together with slight circumstances of unfairness constitutes a compelling circumstance that justifies setting aside a sheriff's sale.[27]

¶ 21 In sum, we conclude that the court of appeals' statement—that gross inadequacy of price and slight circumstances of unfairness justify setting aside a sheriff's sale—does not conflict with the "compelling circumstance" standard articulated in *Huston*. We therefore hold that the court of appeals did not err in its construction of the standard for setting aside a sheriff's sale.

## II. THE COURT OF APPEALS DID NOT ERR IN AFFIRMING THE DISTRICT COURT'S CONCLUSION THAT THE APPELLANTS' CONDUCT AMOUNTED TO, AT LEAST, SLIGHT CIRCUMSTANCES OF UNFAIRNESS

■ ¶ 22 Having concluded that the court of appeals did not err in its construction of the standard for setting aside a sheriff's sale, we must now determine whether the court of appeals erred in affirming the district court's conclusion that the facts of this case involved, at least, slight circumstances of unfairness.

¶ 23 As explained above, a district court may extend a redemption period or set aside a sheriff's sale where (1) a debtor's property is sold at a grossly inadequate price and (2) there are slight circumstances of unfairness during the redemption period caused by conduct of the party benefitted by the sale. Although the Appellants concede that Mr. Pyper's property was sold at a grossly inadequate price, they argue that the court of appeals erred in affirming the district court's conclusion that the facts of this case involved, at least, slight circumstances of unfairness.[28] We disagree.

■ ¶ 24 We have previously explained that a district court has a high degree of discretion in determining whether the facts of a case justify extending a redemption peri-

---

26. *See, e.g., Pender*, 265 P.2d at 647–48 (emphasis added) (internal quotation marks omitted). Courts in other jurisdictions have also consistently recognized that gross inadequacy of price and slight circumstances of unfairness create a presumption of fraud. *See, e.g., Milner v. Denman*, 21 Ill.2d 182, 171 N.E.2d 654, 657 (1961) ("It is well settled in this State that gross inadequacy of price is not of itself sufficient to set aside a judicial sale, yet when such inadequacy is shown, coupled with slight circumstances indicating unfairness or fraud, either upon the part of the officer, the purchaser or the party to the record benefitted by the sale, it will be sufficient for equitable intervention." (internal quotation marks omitted)); *McCartney v. Frost*, 282 Md. 631, 386 A.2d 784, 788 (1978) ("Although the cases and the authorities indicate that a sale will not be set aside for mere inadequateness of price, they state that if the sale is so grossly inadequate as to shock the conscience of the court, or if there be but slight circumstances of unfairness in addition to great inadequateness of price, a sale will be set aside.").

27. *See, e.g., Pender*, 265 P.2d at 648; *Young*, 37 P. at 254; *see also Haymond*, 57 P.2d at 1404 ("[W]hile ordinarily confirmation of [a sheriff's] sale will not be refused because of mere inadequacy of price, slight circumstances in addition thereto or gross inadequacy of price sufficient to shock [a] court's conscience justifies refusal to confirm." (internal quotation marks omitted)).

28. The Appellants also argue that the court of appeals erred in concluding that "even a lack of affirmative actions on the part of the purchaser can constitute slight circumstances of unfairness." Contrary to the Appellants' claims, however, we find no such conclusion in the court of appeals' opinion. Additionally, our review of the court of appeals' opinion suggests that it *did* find that Mr. Dorius had engaged in affirmative conduct—discussing a payoff amount with Mr. Pyper and stating that he needed to review Mr. Pyper's offer with Mr. Bond. Because the facts of this case involve some degree of affirmative conduct, we express no opinion on whether a court would be justified in finding unfairness in a case *not* involving affirmative conduct.

od or setting aside a sheriff's sale after the expiration of the redemption period.[29] We have therefore indicated that a district court's decision to set aside a sheriff's sale is to be reviewed "for an abuse of . . . discretion."[30] Under this standard of review, to reverse the trial court's conclusion that the facts of this case involved slight circumstances of unfairness, the court of appeals would have been required to find that, "given the applicable law and facts, the trial court's decision [was] unreasonable."[31]

¶ 25 In its findings of fact, the trial court found that Mr. Pyper had called the Law Firm approximately one month prior to the expiration of the redemption period. During this phone call, Mr. Pyper expressed his desire to pay off the judgment against him and was told by an employee of the Firm that an attorney would call him back. The trial court also found that Mr. Pyper had a telephone conversation with Mr. Dorius approximately one week later. During this conversation, Mr. Pyper again expressed his desire to satisfy the judgment against him and offered to pay Mr. Dorius $8,500 to do so. Mr. Dorius informed Mr. Pyper that he needed to discuss the offer with Mr. Bond, but Mr. Dorius never followed up with Mr. Pyper.

¶ 26 After reviewing these findings, the court of appeals concluded that Mr. Dorius's words and actions during his phone call with Mr. Pyper "represented, at least implicitly, that [the Appellants] were going to participate in the redemption process."[32] The court of appeals also explained that it was the Appellants' "failure to act in accordance with this representation that justifie[d] the district court's finding of unfairness warranting relief."[33] Although we do not agree that the Appellants' conduct represented an implicit willingness to participate in the re-

demption process, we do believe that their conduct indicated a willingness to negotiate a settlement of the judgment against Mr. Pyper. As a result of this conduct, Mr. Pyper may have reasonably believed that he could resolve the dispute with the Law Firm and reacquire his property through negotiation, and that it was therefore unnecessary for him to utilize the redemption process. Thus, although we acknowledge that this is a close case, we conclude that the Appellants' failure to act in accordance with this representation amounted to, at least, slight circumstances of unfairness. We therefore hold that the court of appeals did not err in affirming the district court's conclusion that the facts of this case involved, at least, slight circumstances of unfairness.

## CONCLUSION

¶ 27 We hold that the court of appeals did not err in concluding that gross inadequacy in price together with slight circumstances of unfairness may justify setting aside a sheriff's sale. We also hold that the court of appeals did not err in affirming the district court's conclusion that the Appellants' conduct amounted to, at least, slight circumstances of unfairness. We therefore affirm the court of appeals' decision.

¶ 28 Chief Justice DURHAM and Justice PARRISH concur in Associate Chief Justice DURRANT's opinion.

Justice NEHRING, concurring and dissenting in part:

¶ 29 I concur in Part I of the majority's opinion.

¶ 30 I am compelled to dissent, however, from the majority's conclusion that Messrs. Bond and Dorius conducted themselves in a

---

**29.** See *Huston v. Lewis*, 818 P.2d 531, 534 (Utah 1991).

**30.** *Id.; see also Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 22, 221 P.3d 194 ("We review a grant of equitable relief for an abuse of discretion."). The court of appeals appears to have reviewed the district court's decision for correctness, a more rigorous standard of review than the abuse of discretion standard. By affirming the district court's decision under a cor-

rectness standard of review, however, the court of appeals implicitly found that the district court had not abused its discretion.

**31.** *Huston*, 818 P.2d at 534.

**32.** *Pyper v. Bond*, 2009 UT App 331, ¶ 18, 224 P.3d 713.

**33.** *Id.*

manner that was unfair to Mr. Pyper. In my view, it was unreasonable for the court of appeals to hold that Mr. Pyper's former lawyers took unfair advantage of his ignorance of the redemption process when they refused to negotiate a settlement or communicate with Mr. Pyper.

¶ 31 First, I am troubled by the majority's pejorative characterization of Messrs. Bond's and Dorius's nonparticipation in settlement negotiations or conversations about the redemption process with Mr. Pyper. We have little information about the circumstances surrounding Mr. Bond's and Mr. Dorius's decision not to participate in settlement negotiations with Mr. Pyper. In fact, the record shows that a finding of unfair circumstances arising before the expiration of the redemption period could stem from only three occurrences.[1] First, Mr. Pyper unsuccessfully attempted to contact Mr. Bond for the first time eighteen days before the 180–day redemption period expired. Mr. Bond never returned the phone call. Second, five days later, Mr. Pyper spoke with Mr. Dorius who indicated that he either would not or could not negotiate any kind of a settlement without first speaking to Mr. Bond. Thereafter, neither Mr. Dorius nor Mr. Bond spoke with Mr. Pyper. And third, neither Mr. Bond nor Mr. Dorius responded to any of the daily telephone calls from Mr. Pyper.

¶ 32 I do not agree with the majority's conclusion that this conduct was an indication of "willingness to negotiate a settlement."[2] Nor do I agree that such conduct would lead a reasonable person to conclude that the redemption process was not necessary to protect one's rights. Rather, I believe that the facts more reasonably convey that Mr. Bond persistently and consistently communicated his refusal to negotiate any kind of a settlement when he did not return a single telephone call from Mr. Pyper. Mr. Bond

presented no explanation for his refusal to return Mr. Pyper's phone calls. He has no obligation to provide such an explanation. Instead, Mr. Dorius and Mr. Bond were perfectly within their rights to refuse to negotiate a settlement of their judgment against Mr. Pyper and to insist that Mr. Pyper follow the proper procedures if he wanted to redeem his property. Nothing that Mr. Pyper did, including persistent unreciprocated telephone calls placed to the Firm, changes the conclusion that Mr. Bond and Mr. Dorius had no duty to correspond with Mr. Pyper.

¶ 33 Second, even if Messrs. Bond and Dorius had participated in negotiations with Mr. Pyper, we cannot know what the nature of that participation would have been or whether it would have prevented the controversy before us. Although he describes Mr. Bond's and Mr. Dorius's conduct as unfair, Mr. Pyper has presented no evidence that these actions caused him to forgo the opportunity to redeem his property. Instead, Mr. Pyper's failure to redeem and the forfeiture of this right were more likely based on his ignorance that the law allowed him to unilaterally redeem his property within 180 days of the sheriff's sale. Nothing in the record suggests that Mr. Bond or Mr. Dorius created, encouraged, or exploited Mr. Pyper's ignorance. However, we can be sure that Mr. Pyper had no reason to expect that Mr. Bond and/or Mr. Dorius would rescue him from his ignorance given that they had already pursued an action, obtained a judgment, and levied upon Mr. Pyper's property. Quite simply, Messrs. Bond's and Dorius's interests were adverse to those of their former client, and they had no reason to save him from his ignorance.

¶ 34 The court of appeals concluded that "[a]s Pyper's former counsel, Bond and Dorius had some obligation not to take advantage of Pyper's known ignorance."[3] Under Utah Rule of Professional Conduct 1.9(c)(1), "[a]

---

1. The court of appeals' and the majority's opinions outline additional interactions between the parties that occurred after May 8, 2007, when the redemption period expired. However, the relevant inquiry is whether there were "slight circumstances of unfairness *during the redemption period* caused by conduct of the party benefitted by the sale." *See supra* ¶ 23 (emphasis added). As a result, any events occurring after the redemption period expired are irrelevant to our analysis.

2. *Supra* ¶ 26.

3. *Pyper v. Bond*, 2009 UT App 331, ¶ 17, 224 P.3d 713.

lawyer who has formerly represented a client ... shall not thereafter ... use information *relating to the representation* to the disadvantage of the former client."[4] However, any knowledge regarding Mr. Pyper's ignorance of redemption law was not related to Bond's or Dorius's representation of Mr. Pyper in the probate matter, but instead arose after their representation had ended in the context of their fee dispute. While Messrs. Bond and Dorius have an ethical obligation not to affirmatively mislead Mr. Pyper, they have no obligation to advise him regarding the law once their representation ends and their interests become adverse.[5] Without some affirmative legal or ethical duty to communicate, Messrs. Bond's and Dorius's non-communication cannot create even the "slight circumstances of unfairness" upon which the majority opinion relies for its result.

¶ 35 Finally, we should not overlook the fact that Mr. Pyper was represented by counsel during and after the redemption period. While the record is not entirely clear, if Messrs. Bond and Dorius were aware that Mr. Pyper was represented by legal counsel, they had an ethical obligation to refrain from communicating directly with Mr. Pyper or returning any of his phone calls.[6] More importantly, it is fundamental to a lawyer's representation that he protect his client from the deleterious effects of ignorance of the law.[7] Mr. Pyper's lawyer had a duty to inform him of his rights in the redemption process and to timely assert those rights on Mr. Pyper's behalf. Given that Messrs. Bond and Dorius no longer represented Mr. Pyper, that their interests were adverse, and that Mr. Pyper had obtained separate legal counsel, I do not see any unfairness in requiring Mr. Pyper to timely assert his redemption rights.

¶ 36 I would therefore reverse the court of appeals.

¶ 37 Justice LEE concurs in Justice NEHRING's concurring and dissenting opinion.

---

4. UTAH R. PROF'L CONDUCT 1.9(c)(1) (emphasis added).

5. Under Utah Rule of Professional Conduct 1.6(b)(5), an attorney "may reveal information relating to the representation of a client ... to establish a claim or defense ... in a controversy between the lawyer and the client." If the duty of confidentiality is abridged because attorney-client interests become adverse due to a fee dispute, it reasonably follows that the attorney no longer has an obligation to advise the former client of the law with respect to their dispute for the very reason that their interests are adverse.

6. UTAH R. PROF'L CONDUCT 4.2(a) ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter.").

7. *See* UTAH R. PROF'L CONDUCT pmbl. ("As a representative of clients, a lawyer performs various functions. As an advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system.").